ANDREW WYLIE, JR., ADMINISTRATOR OF SAMUEL BALDWIN, APPELLANT, *v.* RICHARD S. COXE.

Where a contract was made with an attorney for the prosecution of a claim against Mexico for a stipulated proportion of the amount recovered, and services were ren-

dered, the death of the owner of the claim did not dissolve the contract, but the compensation remained a lien upon the money when recovered.

A court of equity can exercise jurisdiction over the case if a more adequate remedy can be thus obtained than in a court of law.

The want of jurisdiction should have been alleged in the court below, either by plea or answer, if the defendant intended to avail himself of it. It is too late to urge it in an appellate court, unless it appears on the face of the proceedings.

THIS was an appeal from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington.

It was a bill filed by *Mr. Coxe*, under the circumstances stated in the opinion of the court.

The Circuit Court passed the following decree.

*In Equity.*—This cause having been set down for hearing, by consent upon the bill, answer, general replication, and the testimony filed in the case, and having been argued by counsel, and having been fully and materially considered by the court, it is thereupon, on this twenty-eighth day of April, in the year of our Lord one thousand eight hundred and fifty-two, ordered, adjudged, and decreed, that the averments in said bill contained are fully established and sustained, and that complainant is justly and truly entitled to the relief which he prays; and inasmuch as it is thus shown and established that said respondent, as administrator of Samuel Baldwin, did obtain an award as averred, for the sum of seventy-five thousand dollars, which said sum it is admitted that he has received from the government of the United States, and that he holds the same free and clear of all debts due by said intestate; and it being fully shown and established that, by and under the contract made in the lifetime of said Samuel Baldwin between the said Samuel and said complainant, said complainant is justly and equitably entitled to have and receive out of said fund, so in the hands of said defendant, as administrator as aforesaid, at the rate of five per centum on the said sum of seventy-five thousand dollars.

Whereupon, it is now further ordered, adjudged, and decreed, that said defendant, as administrator as aforesaid, do forthwith pay over to said complainant the sum of three thousand seven hundred and fifty dollars.

And whereas it further appears, and it is admitted, that said award became and was payable to said defendant, as administrator as aforesaid, on the sixteenth day of May, eighteen hundred and fifty-one, it is further ordered, decreed, and adjudged, that said defendant, as administrator as aforesaid, do further pay to said complainant interest on said sum of three thousand seven hundred and fifty dollars, to be calculated and estimated

from said 16th May, 1851, until paid, together with the costs of this suit.

From this decree, Wylie, the administrator appealed to this court.

Afterwards he filed a petition to the Circuit Court to set aside the decree for reasons which it is unnecessary to state; but the court overruled the motion, from which judgment also Wylie prayed an appeal to this court. This is mentioned in order that the case in 14 Howard, 1, may be understood.

The case as it now stood before this court, was argued by *Mr. Wylie*, for the appellant, and *Mr. Badger*, for the appellee.

*Mr. Wylie* made the following points:

*First Point.* — The death of Samuel Baldwin in December, 1847, put an end to the agency of both John Baldwin and Richard S. Coxe, as to this claim. Hunt *v.* Rousmanier, 8 Wheat. 174; Campbell *v.* Kincaid, 3 Monroe, Rep. 566. Newbaker *v.* Alricks, 5 Watts, 183.

*Second Point.* — There is no contract even alleged as between complainant and respondent, much less a contract fixing the compensation of the former at five per cent. on the amount recovered. On the contrary, any such contract, agreement, or understanding, is positively denied by the answer, nor was there the slightest proof thereof on the part of the complainant. And yet the court below decreed the payment of the five per cent. as though such a contract had been proved.

*Third Point.* — There was no evidence on the part of complainant to show that he had rendered any valuable service in the case, which in equity and good faith required compensation; and if such service had been rendered at the request of the administrator, there being no special contract shown, the decree of the court below was erroneous. The *quantum meruit* should have been established in another tribunal.

Mr. Justice McLEAN delivered the opinion of the court.

This is an appeal in chancery, from the Circuit Court for the District of Columbia.

The complainant, Richard S. Coxe, filed his bill stating that about the year eighteen hundred and forty-two or three, a certain Samuel Baldwin, a citizen of the United States, residing in Mexico, had a claim against the Mexican Republic for personal outrages and losses of property through the officers of that government. Many similar claims were brought to the notice of the Government of the United States, to enlist its efforts for an indemnity from the Mexican Republic; that the complain-

ant was employed · by Doctor John Baldwin, the brother of Samuel, to prosecute his claim, and various documents and papers connected with the same, were placed in his hands, showing the origin and merits of the claim ; that he brought it to the notice of the government for several years, urging an indemnity.    Much time and labor were expended in this service, in written communications and otherwise to different Secretaries of State.    War against Mexico was declared, which suspended his efforts, until a peace was concluded in 1848, which provided for the settlement of those claims.    An act of Congress was passed, and a board of commissioners authorized to examine and decide such claims.    The board being organized, the papers in relation to Baldwin's claim were laid before it. That up to April, 1849, no other person acted as agent or attorney for the claim but the complainant.    He did every thing that was done in bringing the case before our government for an indemnity.    Samuel Baldwin died, and letters of administration by the advice of the complainant, were granted to Andrew Wylie, the defendant.    The claim was allowed by the commissioners, amounting to the sum of seventy-five thousand dollars, and the complainant believes that to his measures and arguments this allowance may be principally attributed.

It was understood that a commission of five per cent. should be allowed on the sum awarded for the services of the complainant.    That the defendant has refused to pay the compensation stated, &c.

The defendant admits that he was called upon by John Baldwin and complainant, and at their instance he took out letters of administration on the estate of Samuel Baldwin.    The complainant was not employed by defendant — but supposing he had been engaged as counsel by the widow, a memorial was prepared to be presented to the board, setting forth the claim, by the defendant and submitted to the complainant, which he approved, and it was used before the board.    Other documents being furnished, another memorial was presented by the defendant.

Mr. Goix, the agent of the widow, came on from Mexico, bringing with him the will of Samuel Baldwin, which bequeathed to his wife and children his property and appointed her executrix. Goix, being the agent of the widow, dismissed the complainant as the attorney in the case, after which he was not consulted by the defendant ; and any services rendered by the complainant subsequently, were voluntary.    The defendant, however, admits, that on one or two occasions, the complainant " happened to be present with the board of commissioners, while the claim was under consideration, and rendered essential service in removing

objections which might have proved very injurious, if not fatal to it, if they had not been removed."

John Baldwin, a brother of Samuel, being sworn, states, that he received various documents from his brother in relation to this claim, with instructions to take measures for the recovery of it. He placed the papers in the hands of the complainant, and agreed with him to prosecute the claim on the same conditions as a claim he had prosecuted for witness. The papers were translated, and, with a memorial, were filed in the department of State. His brother died, and at the instance of complainant the defendant was appointed administrator, for whose services witness agreed to pay five per cent. but witness did not intend to supersede the complainant, and thinks he is entitled to his fee.

In answer to an interrogatory, the witness says, the complainant was to receive a contingent fee of five per centum out of the fund awarded, whether money or scrip; if nothing was received, he was entitled to nothing for his services.

It is contended by the defendant, that the complainant having been dismissed by the agent of the widow, who was the executrix of her husband, and not being employed by the defendant, he has no right to the compensation claimed. That John Baldwin acted as the agent of his brother, in making the contract with the complainant is proved. The defendant seems to suppose that, as on the death of Samuel Baldwin, the agency of his brother ceased, the contract which had been made by him was no longer in force. The relation of administrator enabled the defendant to control the case and dispense with the further services of the complainant; but he had no power to annul the contract if made *bonâ fide*, by the complainant, and the business had been faithfully prosecuted by him.

It appears the complainant, on being employed in the case, had the papers translated and filed, with a memorial, in the Department of State; and that for several years, with much labor, he did all in his power to procure the action of the federal government in its behalf. A claim of indemnity from Mexico, through the remonstrances of our government, was the only step which, at that time, could be taken. A war intervened, and on the restoration of peace, provision was made for the examination and decision of such claims, and also for their payment.

The complainant gave advice as to the necessary evidence to be procured in Mexico, for the establishment of the claim, and was consulted respecting the memorial to the commissioners; and while they had the claim under examination, it is admitted that the complainant, by his explanations and arguments, removed difficulties and objections which, unexplained, would in

all probability have prevented the allowance of the claim. We think the contract is proved, also the services rendered under it, by the complainant, and that he is entitled to the compensation claimed.

It is objected that equity can exercise no jurisdiction in the case, as adequate relief may be obtained at law.

There may be a legal remedy, and yet if a more complete remedy can be had in chancery, it is a sufficient ground for jurisdiction. The 8th section of the act to carry out the Mexican treaty, authorizes a bill to be filed, where an individual other than the one to whom the money was awarded claims it, to contest the right, and to enjoin the payment of the money. This applies only to cases where different individuals claim the fund, but the reason of such a proceeding may, to some extent, apply to other cases. And it applies to the case before us, if the money still remain in the treasury. The bill, however, does not seem to have been drawn with reference to the act.

The evidence proves that the complainant was to receive a contingent fee of five per centum, out of the fund awarded, whether money or scrip. This being the contract, it constituted a lien upon the fund, whether it should be money or scrip. The fund was looked to and not the personal responsibility of the owner of the claim. A bill filed under the act would have authorized an injunction for the amount claimed, by complainant. Such a procedure would be within the act. But under the contract the lien on the fund in the hands of the administrator, is a sufficient ground for an equity jurisdiction. The payment of the fund to the executrix in Mexico would place it, probably, beyond the reach of the complainant.

The want of jurisdiction, if relied on by the defendants, should have been alleged by plea or answer. It is too late to raise such an objection on the hearing in the appellate court, unless the want of jurisdiction is apparent on the face of the bill.

We affirm the decree with costs.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs and interest until paid, at the same rate per annum that similar decrees bear in the courts of the District of Columbia.