## Fenn, Appellant, *v.* McCarrell.

*Equity—Referee's findings of fact—Review.*

A referee's finding of fact in an equity suit, that a particular fund had
been divided among the parties to the suit without fraud, will not be re-
versed, where such findings are based upon sufficient evidence, and con-
firmed by the court below, and no manifest error is made to appear.

*Contract—Champerty—Fruit of litigation.*

While contracts by litigants with others in consideration of aid given to
share in the fruits of litigation are not looked upon with favor either at com-
mon law or in equity, it cannot be said that in Pennsylvania they have been
regarded as so contrary to public policy, as to be certainly void.

Argued March 21, 1904.    Appeal, No. 150, Jan. T., 1903,
by plaintiff, from decree of C. P. No. 2, Phila. Co., June T.,
1898, No. 608, dismissing bill in equity in case of James V.
Fenn v. Samuel J. M. McCarrell et al.    Before DEAN, FELL,
BROWN, MESTREZAT and THOMPSON, JJ.    Affirmed.

Bill in equity for an account.

The bill charged in substance that the defendants jointly
combined to distribute in fraud of the rights of the plaintiff
a certain fund amounting to $33,196, being the amount of a
judgment obtained by the plaintiff Fenn against William
Dickey and others in a proceeding in the court of common
pleas of Jefferson county, affirmed by the Supreme Court (see

Fenn v. Dickey, 178 Pa. 258), in particular, charging that in such wrongful distribution the defendant Barton Pardee had received the sum of $3,000, the defendant Harry A. Hoopes the sum of $10,949.35, the defendant J. Rider Cady the sum of $4,500, the defendant Samuel J. M. McCarrell $4,500, and the defendants David Fleming's executors $4,195.65, and the plaintiff had only received the sum of $2,000, the balance of said fund being distributed in a manner to which the plaintiff did not object, whereas in fact the plaintiff charged said Pardee was not, entitled to receive more than $50.00, the said Hoopes not more than $3,000, the said McCarrell not more than $608 and the said Cady not more than $2,008.80, and the said Fleming's executors nothing, and that the balance of said funds, except as above specified, should have been received by the plaintiff.

The defendant Cady is a resident of the state of New York, upon whom no process was served and by whom no answer was filed.    The other defendants filed answers admitting the receipt by themselves respectively of the moneys specified, but denying all charges of fraud or conspiracy and specifically asserting their right to receive the moneys thus paid to them and the plaintiff's assent to the distribution at the time it was made, on January 15, 1895.

The case was referred to Richard C. Dale, Esq., who reported in part as follows :

The case as presented is an effort upon the part of the plaintiff to undo two independent settlements, one made between himself and the defendant Barton Pardee, the other between himself, of the one part, and the defendants Hoopes, Cady, McCarrell and the estate of David Fleming of the other part.

There is no relation between these two settlements except that they were made on the same day and arose out of the same general fund, and the point was made on behalf of Barton Pardee that the joinder of these questions in one bill rendered it multifarious and defective in law.    The point was probably raised at too late a stage in the cause to have any legal force, and in the view which the referee takes of the merits of the case it is not necessary to further refer to it except to call attention to it.    Each settlement was, however, suffi-

ciently independent of the other to render it proper that such settlement should receive independent consideration.

## THE PARDEE SETTLEMENT.

It will be sufficient to call attention to the main feature of the situation as it existed when the parties met at McCarrell's office at Harrisburg on the afternoon of January 15, 1897.

Messrs. Stewart and W. N. Conrad were there from Brookville with bank paper amounting to $29,145, representing the balance of the fund collected on account of the judgment of James V. Fenn against Dickey et al. After deducting the fees of Stewart and Conrad, as to which there is no contention, they had brought these funds to Harrisburg under explicit instructions from John Conrad not to make any payments or distribution until the foreign attachment which Pardee had placed upon them, and also the bill in equity filed in Jefferson county, was discontinued.

Pardee was there represented by counsel, both at Brookville and Harrisburg, Messrs. Jenks, Kress and Weiss and Gilbert, whose good faith in asserting Pardee's claim for $6,000 is not questioned.

Fenn was there, and the uncontradicted evidence is that he was supported in his contention that Pardee's claim was without merit by McCarrell, Cady and Hoopes. There is nothing in the evidence to suggest that these last named defendants failed in any respect to stand with Fenn, both in the contention and subsequent negotiation which led to the settlement. The averment of the bill charging a conspiracy between Pardee and the remaining defendants is without a scintilla of evidence to support it. Indeed, plaintiff's counsel, who, through this most difficult and unpleasant litigation, has sought to protect and enforce the interest of his client with a zeal and intelligence which is worthy of the highest commendation, rested his argument in this aspect of the case not so much upon any proof of actual conspiracy, as upon the ground that the claim of Barton Pardee was so clearly devoid of merit as to render his action in pressing it in connection with the circumstance, that by so pressing it the entire fund was tied up, was per se fraudulent and so inequitable as to justify a chancellor to reopen the settlement and compel restoration of the booty.

While such an argument might appeal to the sympathy of the court, particularly under such circumstances as are disclosed in the record where the plaintiff admittedly has received very little personal benefit from his large recovery against Dickey et al., a chancellor as well as a court of law must decide causes according to established principles, and there are obstacles in the way of plaintiff obtaining the relief which cannot be disregarded.

1. It cannot be said that Pardee might not have recovered in the enforcement of his claim for a one sixth interest in the proceeds of the verdict.

It is true that contracts by litigants with others in consideration of aid given to share in the fruits of the litigation were not looked upon with favor either at common law or in equity, but it cannot be said that in Pennsylvania they have been regarded as so contrary to public policy as to be certainly void.

In Grove v. McCalla, 21 Pa. 44, it appeared that McCalla was employed by Grove to get the witnesses into court in a suit brought by Grove against one Marsh ; it also appeared that McCalla was examined as a witness for the plaintiff at the trial of that suit. Grove had promised to pay McCalla $100 for the services rendered by him, to be paid when the suit against Marsh was settled and the money paid. A recovery was had against Marsh, the money collected, and then McCalla sued Grove.

At the trial the counsel of Grove asked the judge to charge that if a plaintiff in a suit at law promises one of his own witnesses, who is afterwards examined in the cause on the plaintiff's behalf, to give him, the witness, a sum of money beyond his witness fee for his services in the cause, when he, the plaintiff, gets his money from the defendant in the cause in which the services are to be rendered, that the promise is against the policy of the law, and as such a nullity, and cannot be recovered on.

The judge charged that if the defendant employed the plaintiff to attend to subpœnaing witnesses, and other duties connected with a suit pending, undertaking to pay him a sum certain out of the money recovered in the suit, there is nothing in the policy of the law to prevent the plaintiff from recovering,

notwithstanding the fact he was also examined as a witness in the case.

This judgment was affirmed, the court saying that the contingent interest which McCalla had in the recovery, if it had been disclosed at the trial, would have been a matter going to his credibility, but that it could not be set up to prevent recovery on the express promise.

In Perry v. Dicken, 105 Pa. 83, a contract between an attorney at law and his client for a contingent fee was sustained, notwithstanding that it appeared that at the time the promise was made it was understood by both parties thereto that the attorney was an indispensable witness on behalf of his client, and that it was expected that as such witness he would testify. It is true that the transaction was one which did not meet with favor even in the majority of the court which sustained the contract, and three of the judges dissented.

But these two cases show that whatever may be our professional view as to the impropriety of any arrangements made between parties and expected witnesses for contingent compensation dependent upon the result of litigation, it cannot be said with certainty that such contracts are void.

In Chester County v. Barber et al., 97 Pa. 455, the uncertainty of the law upon this question is shown by a sentence taken from the opinion of Mr. Justice PAXSON at page 463, where he says:

"Nor need we stop to consider whether the agreement as set out in the narr. is champertous, nor whether the English statutes in regard to this offense are in force in this state."

The agreement under consideration was one by county commissioners employing counsel to collect certain claims due the county and to pay counsel a contingent fee of fifty per cent of the recovery.

This case of course has no direct bearing, but the quotation from the opinion of the court is given for the purpose of showing that the law upon this general subject has never been settled.

In this uncertain condition of the law, counsel for Pardee might well assert his claim under his contract with earnestness. and counsel for Fenn, while disputing the propriety of the claim under all the circumstances of the case might well have felt there were serious difficulties in the way of maintaining

their defense at law, and when, as appears from the testimony, Mr. Fenn authorized a settlement not exceeding $3,000, counsel might wisely conclude that it was to the interest of their clients to bring about a settlement on that basis.

2. A compromise having been made with what appears to the referee to have been a clear understanding of the material facts on both sides and Pardee having abandoned the assertion of his full claim, discontinued his attachments and dismissed his bill in equity in consideration of receiving $3,000, a court of equity has no power to reopen the settlement thus made in a case where the contract of settlement appears to have been the voluntary and executed act of both parties thereto.

The learned counsel for the defendant Pardee supported the legal position of his client by reference to certain other propositions of law which possibly are applicable and which if necessary might be successfully invoked in bar of the prayer of the complainant, but the referee being of the opinion that as against Pardee the plaintiff has failed to maintain his bill, refrains from the discussion of legal propositions as to the applicability of which there might be some difference of opinion.

The referee therefore reports as to defendant Pardee, the bill should be dismissed with costs.

### AS TO THE CLAIM AGAINST FLEMING'S ESTATE.

The discussion of this branch of the case in some degree involves a consideration also of the facts which are material to the discussion of the claims against McCarrell and Hoopes. The facts which are material have been found. The Pardee claim having been disposed of at the afternoon session, the parties again met at McCarrell's office after supper; Stewart and Conrad still had in their possession the remainder of the fund, to wit: $26,145. After a long discussion between the parties, in which it first appeared that the claims of those adverse to Fenn would leave nothing for him, about or shortly before midnight, Fenn, McCarrell and Hoopes joined in a writing, in which Messrs. W. F. Stewart and John Conrad & Son were requested to pay to Cady and McCarrell, attorneys, this sum of $26,145. This was thereupon done. The distribution of this money by McCarrell and Cady at a later hour of the night was pursuant to the written instructions of the plaintiff, and

by that writing the plaintiff agreed that the executors of David Fleming's estate should receive the sum of $4,195. That Fenn owed to the estate of David Fleming at least that sum is a fact, which upon the evidence is not open to doubt, and, in addition to the moral obligation which every debtor owes to apply his assets, when received, to the payment of his debts, the right of Fleming's estate specifically to receive payment of this indebtedness out of this fund is evidenced by the written agreement of Fenn, under seal, dated August 2, 1888. We have therefore the facts:

1. That Fenn owed the money and had continued to owe it for nearly ten years without ability to pay it; and

2. That in 1888 he had evidenced his willingness to appropriate this fund to the payment of his indebtedness to Fleming by a formal writing, executed under seal; and

Finally, on the night of distribution he made effective both his moral obligation and his legal duty by a writing directing the custodian of the fund to apply the sum of $4,195.65 to the payment of this debt.

Under these circumstances the referee is unable to see what basis there is for any complaint on the part of Fenn, except that disappointment of feeling which a man, whom the record shows for many years had been very impecunious, would experience in seeing a fund which arose out of a transaction in which he was the principal passing from under his control. Whatever sympathy may be felt for the plaintiff in his failure to retain that portion of the fund which, by reason of his improvident contracts, was distributed to Pardee and Hoopes, the referee deems it proper to say that the distribution of so much of the fund as went to Fleming's estate went where both in law and good conscience it ought to go.

The referee is, therefore, of opinion that as to the claim for the recovery of any portion of the money distributed to the estate of David Fleming the bill should be dismissed.

Exceptions to the report of the referee were overruled, and a decree entered dismissing the bill.

*Error assigned* was the decree of the court.

*Charles H. Edmunds* for James V. Fenn, appellant.

*Alex Simpson, Jr.*, with him *Charles L. Brown*, for Samuel J. M. McCarrell, H. A. Hoopes and the estate of David Fleming, deceased.

*W. C. Kress*, with him *S. Davis Page*, for Barton Pardee, appellee.

Per Curiam, April 11, 1904:

The plaintiff obtained a judgment in common pleas of Jefferson county against William Dickey and others, in the sum of $33,196 which was affirmed by this court: Fenn v. Dickey et al., 178 Pa. 258. All of defendants had an interest in the judgment. After its affirmance it was collected and the amount was by mutual arrangement divided among them, Pardee receiving $3,000, Harry A. Hoopes $10,949.35, J. Rider Cady $4,500, Samuel J. McCarrell $4,500, David Fleming's executors $4,195.65, and plaintiff James Fenn $2,000. This distribution was made about January 15, 1895. Afterwards on July 8, 1898, plaintiff Fenn filed this bill against defendants charging them with fraud in the distribution, averring that Pardee was entitled to receive only $50.00, Hoopes not more than $3,000, McCarrell not more than $608, Cady not more than $2,008.80, and that Fleming's executors should have received nothing. To this bill all the defendants except Cady, who was not served, appeared and answered denying all the material averments of the plaintiff's bill, and specifically averring their right to be paid the several sums received by them, and specially averring plaintiff's assent thereto at the date of distribution. The issue thus made up was referred by agreement of parties under the act of 1874 to Richard C. Dale, Esq., as referee to take testimony, find facts, announce conclusions of law and suggest decree.

He had many hearings, and with much deliberation found the facts in fifty-one separate and distinct specifications. To nearly all of them he appends the reasons on which he bases his conclusions, and to some of them sets out the correspondence and other evidence. Under our well known rule, unless manifestly erroneous, we would not touch any one of them. After careful examination of the evidence we do not find that any of them are tainted with error. That his conclusions of

law, on these facts are sound, irresistibly follows. On his opinion setting out these conclusions the decree of the court below is affirmed and the appeal is dismissed at costs of appellant.

The findings of fact take up thirty-eight printed pages of appellant's paper-book, his conclusions of law nineteen pages more. While the elaborate report of these findings and conclusions was necessary for a proper review of the case in this court, they are not otherwise important to the legal profession or to other than the parties. The full publication of them would only incumber the printed reports with useless matter. We therefore direct that the decree be affirmed on that part of the opinion embodying the referee's general conclusions, as set out on pages sixty-six to seventy-two inclusive of appellant's paper book.