JOHN SHEPARD

v.

NEW JERSEY CONSOLIDATED WATER AND LIGHT COMPANY.

[Submitted December 19th, 1907.    Decided December 26th, 1907.]

1. On the foreclosure of a mortgage made by the Elberon Water and Light Company to the Colonial Trust Company as trustee, to secure an issue of bonds, sale was made subject to the prior lien of outstanding receivers' certificates, and the complainant, who had become the holder and owner of all the certificates, filed his bill to foreclose the lien created by them, as against the New Jersey Consolidated Water and Light Company, which had been organized by the purchaser at such sale for the purpose of taking over the property, and against the Columbia Trust Company, the latter being made a party defendant for the reason that it was a trustee of a new bond issue made by the New Jersey Consolidated Water and Light Company. The Colonial Trust Company, the trustee of the old bond issue, was not made a party. Pending the foreclosure suit a voluntary reorganization committee put out a plan for the reorganization of the mortgagor which contemplated a transfer to the committee of all the claims of all the creditors, to be used by the committee in the purchase of the property at the foreclosure sale and placing the plant in good condition. The petitioner having accepted this plan and transferred its claims to the committee and deposited its bonds with the Columbia Trust Company, applied to be made a party defendant in order to set up as a defence to the foreclosure proceedings of Shepard, the complainant, the allegation that he, as the holder of the receivers' certificates had agreed with the reorganization committee that he would accept bonds of the new company under the modified plan of reorganization in lieu of the receivers' certificates, and so defeat the present suit.— *Held*, upon examining the original and modified plans of reorganization, that the petitioner could not be admitted as a party defendant upon the following grounds urged in resistance of the motion in behalf of the complainant, viz., (1) because it appears by the moving papers that while the petitioner deposited its bonds under the plan of reorganization with the Columbia Trust Company, and agreed to accept bonds of the new company for the amount of its claim, as a matter of fact it has not so accepted the new bonds, and, therefore, cannot be said to be either the owner or holder of bonds of the old company, or of bonds of the new company; (2) that as a bondholder of the old company, if it is to occupy that position, it is represented by the Colonial Trust Company under the terms of the trust mortgage, and that its only remedy is to seek relief through the rights of the Colonial Trust Company, if any it has; (3) that it does not appear that there was ever any binding agreement made

by Mr. Shepard, the complainant, to accept bonds of the new company in lieu of the receivers' certificates which he holds.

2. But if all the foregoing questions could have been resolved in favor of the petitioner there remains an obstacle to this proceeding which it cannot overcome. For there is no such thing known to equity practice as the admission of a stranger to a pending suit, either as complainant or defendant, unless the complainant shall consent thereto, or there be a statute within the provisions of which he may bring his application.

3. The only statutes which relate to the subject are sections 29 and 58 of the Chancery Practice act (*P. L. 1902 p. 510*), and they do not permit the petitioner to be admitted as a party to the pending suit.

On petition of C. E. Hewitt & Company to be admitted as defendant.

The petition is filed by C. E. Hewitt & Company praying to be admitted as a defendant in this suit, with leave to answer.

The Elberon Water and Light Company made a mortgage to the Colonial Trust Company of New York, as trustee, to secure an issue of bonds. The company defaulted in its payments thereon, and suit was begun in this court to foreclose the mortgage. In that proceeding receivers were appointed. They had authority conferred upon them to finish the works, which were in an incomplete state, and to this end to borrow money on receivers' certificates. This they did in the aggregate sum of $130,000. These certificates were made a first lien on all property of the company, and they are all now held by John Shepard, the complainant in this suit. Meanwhile the foreclosure suit went to a final decree, which was entered on December 12th, 1906, and under it the property was sold on March 23d, 1907. The sale was made subject to the prior lien of the receivers' certificates on account of which there has never been any payment made. The property was purchased by Mr. Ludlow, and was shortly afterwards conveyed by him to a new corporation, the New Jersey Consolidated Water and Light Company, which had been organized for the purpose of taking over the property. Pending the foreclosure suit, a voluntary reorganization committee was made up, who on October 30th, 1906, put out a plan for reorganization of the company. It contemplated a transfer to the committee of all the claims of all the creditors, to be

used by the committee in its discretion in the purchase of the property at the foreclosure sale, and placing the plant in good condition. The petitioner accepted this plan on December 12th, 1906, and about the same time transferred its claims to the committee and deposited its bonds with the Columbia Trust Company.

The scheme of reorganization put out by the committee and contemplated by this plan included the acceptance by the holders of the receivers' certificates of bonds of the reorganized company in lieu thereof—the statement in the plan being this:

"The purchaser of more than two-thirds of the receivers' certificates issued and outstanding has agreed with the committee to furnish sufficient funds to liquidate and pay the outstanding receivers' certificates due December 1st, 1906, with interest thereon, together with the amount required to liquidate the indebtedness of the receivers connected with the increased work completed and contracted for amounting in the aggregate to about $130,000, and to accept on account of the amount so advanced bonds of the corporation to be issued as in this plan provided at 80 per cent. of their par value."

It does not appear whether this agreement was in writing nor by whom it was made. The committee learned later on that the certificate holders refused to carry out this agreement, and on January 28th, 1907, they sent out to the creditors a modified plan of the reorganization, which was likewise accepted by the petitioner on February 28th, 1907. The petitioner's claim was then liquidated at $14,000, to secure which it held $20,000 of the bonds of the Elberon company, which had already been deposited with the Columbia Trust Company. In the modified plan which was sent out by the committee occurs this notice:

"All the receivers' certificates authorized by the court and mentioned in the plan have been sold; the money has been paid to the receivers and a part or all thereof disbursed by them. The purchasers of the receivers' certificates, however, notwithstanding their agreement to exchange the same for bonds to be issued under the plan, have recently notified the committee that they will not make the exchange on the basis set forth in the plan, one of the grounds alleged being that the bonded issue should be materially reduced. While the holders of the receivers' certificates, in the judgment of the committee, are responsible, an attempt to compel an exchange by such holders would involve long litigation, and would naturally interfere with the proposed reorganization. The holders of the

certificates, however, have agreed to extend the time of payment from December 1st, 1906, to June 1st, 1907. And your committee, in conformity with the provisions of the plan heretofore submitted, recommends 'certain modifications thereinafter mentioned;' "

at the end of which occurs the following sentence: "Sufficient bonds are to be reserved by the company to be used in liquidating and paying the outstanding receivers' certificates."

At the time the original organization plan was sent out the receivers of the Elberon company had issued certificates aggregating $90,000. On November 20th, 1906, they received authority to issue $40,000 more, and these were all issued before the modified plan was sent out.

The sale of the property of the Elberon company, made in March, 1907, was made subject to the prior lien of the receivers' certificates, then aggregating $130,000 of principal. By August 13th, 1907, the complainant herein, John Shepard, had become the holder and owner of all the certificates, and on that day he filed his bill in this court to foreclose the lien created by them as against the New Jersey Consolidated Water and Light Company and the Columbia Trust Company, the latter being made a party defendant for the reason that it is the trustee of a new bond issue made by the New Jersey Consolidated Company. The Colonial Trust Company is not a party.

*Mr. John Griffin,* for the petitioner.

*Mr. Robert H. McCarter,* attorney-general, for the complainant.

HOWELL, V. C.

The petitioner now applies to the court to be made a defendant in order that it may set up as a defence to Mr. Shepard's foreclosure proceedings the allegation that he, as the holder of the receivers' certificates, agreed with the reorganization committee that he would accept bonds of the new company under the modified plan of reorganization in lieu of the receivers' certificates, and so defeat the present suit. The motion is resisted on the following grounds: *First.* Because it appears by

the moving papers that, while the petitioner deposited its bonds under the plan of reorganization with the Columbia Trust Company, and agreed to accept bonds of the new company for the amount of its claim, as a matter of fact it has not so accepted the new bonds, and therefore cannot be said to be either the owner or holder of bonds of the old company, or of bonds of the new company. *Second.* That as a bondholder of the old company, if it is to occupy that position, it is represented by the Colonial Trust Company, under the terms of the trust mortgage, and that its only remedy is to seek relief through the rights of the Colonial Trust Company, if any it has. *Third.* That it does not appear that there was ever any binding agreement made by Mr. Shepard, the complainant, to accept bonds of the new company in lieu of the receivers' certificates which he holds.

As to the first objection, I am obliged to find that the petitioner has placed itself in a somewhat equivocal position. It has deposited its bonds in pursuance of the plan of reorganization by which it agreed to take therefor bonds in the new company, but it says, in its petition (paragraph 10), that at the time it made its deposit of bonds and at the time of the sale of the property it was not aware of the fact that the holders of the receivers' certificates would not accept the bonds of the new company, and that when it subsequently learned this fact it did not take from the Columbia Trust Company the bonds of the new company in lieu of its bonds of the old company. As to a portion of this statement the petitioner is mistaken. It is undoubtedly true that at the time of the issue of the first plan of reorganization it did not know that the holders of the receivers' certificates would refuse to accept bonds in the new company; but it did learn it by the issue of the modified plan of January 28th, 1907, which was accepted by it under date of February 28th, 1907, a month before the sale of the property was made; and when it says that after it learned of this fact of refusal it did not accept the bonds in the new company, I must find that this operates as a refusal to accept such bonds, and that it can now base no right of action or defence on bonds which it has refused to accept.

As to the second objection, namely, that the petitioner's

remedy is to be worked out through the Colonial Trust Company's rights as trustee, it is sufficient to say that the Colonial Trust Company is not a party to this record, and that it would experience the same difficulty in being made a party as does the present petitioner.

As to the third objection, I find that there is not anywhere in the moving papers any statement that the certificate holders have executed any binding agreement to take the bonds of the new company in exchange for their certificates, except the extracts herein above made, from the plan of reorganization. While it very fully appears from the modified plan that the certificate holders had refused to make the exchange, that would be no defence to the present bill, unless the petitioner, or those with whom it was privy, had made an agreement which could be enforced. It would be futile for a defendant to allege an agreement which could not be proved because it never existed, and it would be quite as futile to allow a person who is not a party to the suit to come in and set up this defence unless he could show *prima facie* on his moving papers that such defence existed. *Mutual Life Insurance Co.* v. *Schwab,* 51 *N. J. Eq.* (6 *Dick.*) 204; *Davis* v. *Sullivan,* 33 *N. J. Eq.* (6 *Stew.*) 569.

Taking the plan and the modified plan together as one document, the only agreement on the part of the certificate holders therein stated is that they have agreed to extend the due day from December 1st, 1906, to June 1st, 1907.

But if all the foregoing questions could have been decided in favor of the petitioner there remains an obstacle to this proceeding which it cannot overcome. There is no such thing known to equity practice as the admission of a stranger as a party to a pending suit, either as complainant or defendant, unless the complainant shall consent thereto, or there be a statute within the provisions of which he may bring his application. *1 Dan. Ch. Pr. 287, note 2.* Chancellor Cooper has collected the cases on the subject in *Stretch* v. *Stretch,* 2 *Tenn. Ch. 140* (*1874*), and it was declared to be the rule in this state, in *Jones* v. *Winans,* 20 *N. J. Eq.* (5 *C. E. Gr.*) 96 (*1869*). There the petitioner sought to be made a party defendant to a foreclosure suit; he had no judgment or other lien; he had only an award

in an arbitration proceeding. The court held that he was not a necessary party, and that there was no authority or precedent for such an order as was asked for; that it was against the settled principles on which the practice of the court was founded; that there was no precedent for allowing anyone not a party to the suit to intervene by petition on his own motion to be made a party, except in cases like that of *Melick* v. *Melick, 17 N. J. Eq. (2 C. E. Gr.) 156 (1864),* where a *cestui que trust* was permitted to litigate in the name of his trustee, who was a defendant, but was in a position to have more interest or leaning in favor of the complainant than of his *cestui que trust.* This exception in favor of trust suits is very clearly stated in the opinion of Chancellor Cooper, above referred to. There are cases in which the application has been granted either with the consent of the complainant or where he did not object. But here the complainant objects, and unless the petitioner can exhibit a statute which permits it he cannot be admitted to the suit. The only statutes which relate to the subject are sections 29 and 58 of the Chancery Practice act. *P. L. 1902 p. 510.* These acts were passed in 1870, the year after Chancellor Zabriskie decided the case of *Jones* v. *Winans, supra. P. L. 1870 p. 40.* The twenty-ninth section provides for the admission to a pending suit of any person who should acquire such an interest in the subject-matter of the suit after the filing of the bill, as would have made him a proper or necessary party if such interest had been possessed by him at the time of the commencement of the suit, and prescribes a proceeding by petition. The fifty-eighth section relates to the admission to foreclosure suits of persons claiming under conveyances or liens, the evidence of which is not recorded. This section, however, is so far from the question now under discussion that it may be disregarded. The scope of the twenty-ninth section was explained in *Mutual Life Insurance Co.* v. *Schwab, 51 N. J. Eq. (6 Dick.) 204.* There Vice-Chancellor Green says that this section does not contemplate the admission of a party as a defendant when the right which he seeks to set up is one that requires that he should by way of answer and cross-bill place himself in a position where he can be entitled to the relief asked for. Its design

is to provide an easy and inexpensive method by which the person who succeeds to or acquires *pendente lite* an interest in the subject-matter of a suit may take the place of his predecessor under the issues existing in the suit and just in the state or condition in which those issues are when he comes in, but it is not its design to give him the right to raise new and different issues from those existing at the time he comes in. If his interest requires, and he wants to do that, he must proceed by an original bill, or an original bill in the nature of a supplemental bill. The simple remedy of application by petition under the statute is not available for that purpose. In that case the petitioner was driven to an original bill in the nature of a supplemental bill. *Hare* v. *Headley, 52 N. J. Eq. (7 Dick.) 496.* The scope of such a bill is defined in *Mitf. Eq. Pl. 118.*

There have been many cases since 1870 in which parties have been admitted as defendants, but so far as I have been able to discover they are all proceedings under the statute of 1870, and I know of no other statute under which the application could be made. A few months after the passage of the act of 1870 the case of *Linn* v. *Wheeler, 21 N. J. Eq. (6 C. E. Gr.) 231,* was decided. An application similar in principle to the one now in hand was denied. In *Esterbrook* v. *Ahern, 31 N. J. Eq. (4 Stew.) 3,* the petition was dismissed and the applicant driven to filing an original bill. In *Hewitt* v. *Montclair Railway, 25 N. J. Eq. (10 C. E. Gr.) 100,* the applicant was admitted by force of the statute, but was not permitted to answer and thus raise new issues. In all the cases, only a few of which are here cited, the court has striven to maintain the integrity of the issues raised by the original pleadings and to keep the newly-admitted parties within the scope of the original suit. The views herein above expressed do not in any way militate against the inveterate rule which permits the court to refuse to proceed for manifest want of parties. If at any stage of a cause there appears to be a lack of parties the court will order it to stand over until the complainant shall have had an opportunity to bring them in, and if he does not comply with the suggestion of the court he stands under the liability of a dismissal. *Van Keuren* v. *McLaughlin, 21 N. J. Eq. (6 C. E. Gr.) 163;* reversed on another point,

21 N. J. Eq. (6 C. E. Gr.) 379. This practice, however, has no relation to a motion by a total stranger to the record for leave to come in with a demand that may require a hearing on issues outside of those made between the original parties. In the case of Iauch v. de Socarras, 56 N. J. Eq. (11 Dick.) 525 (1898), Vice-Chancellor Pitney declined to permit a judgment creditor who had not been made a party to the suit to be admitted as a party to a creditor's bill, on the complainant's consent, and against the defendant's objection. The case contains a collection of all the authorities. The result is that the application must be denied.