RHINEHART v. VICTOR TALKING MACH. CO.

(District Court, D. New Jersey. May 14, 1917.)

1. EQUITY ☞114—BILL BY INTERVENER NOT SUPPLEMENTAL BILL.

A bill filed by an intervener, who asserted rights in the cause of action, is not what is ordinarily known as a "supplemental bill," nor tested by rules applying to a supplemental bill, though so termed.

2. EQUITY ☞364—DISMISSAL FOR ABSENCE OF NECESSARY PARTIES.

It is the general rule in equity that all persons materially interested either legally or beneficially are to be made parties, so there may be a complete decree, and a court will sua sponte dismiss a bill, if it appears that to grant the relief prayed for would injuriously affect persons interested in the matter who are not parties.

3. EQUITY ☞114—RIGHT TO INTERVENE.

A stranger cannot be admitted on his own motion as a party to a pending suit, without the plaintiff's consent, unless there is a statute enabling him to do so.

4. COURTS ☞343—EFFECT OF EQUITY RULE RELATING TO INTERVENTION.

Equity rule 37 of the Supreme Court (198 Fed. xxviii, 115 C. C. A. xxviii), relating to intervention by strangers to suits, has the same effect as a statute.

5. COURTS ☞343—REQUISITES OF BILL BY INTERVENER.

One intervening in a pending equity suit, pursuant equity rule 37 of the Supreme Court (198 Fed. xxviii, 115 C. C. A. xxviii), should file some formal pleading, besides the petition for intervention, setting forth facts sufficient to entitle intervener to intervene and to the relief prayed for, which pleading must be judged by the rules applicable to pleadings in general.

6. EQUITY ☞114—ESSENTIALS OF BILL OF INTERVENTION.

Pleading by which the intervener seeks to assert rights in a pending suit, which may be properly designated as bill of intervention, should undoubtedly call for an answer from, and be filed against, the complainant, as well as against the defendant, and, if it does not do so, is defective.

7. COURTS ☞343—RIGHT TO INTERVENE UNDER EQUITY RULE.

While one intervening pursuant to Supreme Court equity rule 37 (198 Fed. xxviii, 115 C. C. A. xxviii) must have some interest in or claim to the demand in suit, or some connection with, interest in, or lien on the subject-matter of the litigation, yet where the intervener had either an equitable assignment to part of the recovery or equitable lien on any recovery in suit, intervention should be allowed.

8. ASSIGNMENTS ☞52—ESSENTIALS OF EQUITABLE ASSIGNMENT.

A contract between plaintiff and the intervener, which made a present appropriation in favor of intervener of part of the funds to be recovered, and was not a mere promise to pay out of a particular fund, amounts to a valid equitable assignment.

9. LIENS ☞7—CREATION OF EQUITABLE LIEN.

An agreement whereby the intervener was to share any sums recovered, if considered merely as an agreement to pay, held to create an equitable lien, because indicating an intention on the part of both parties to make the fund recovered security for the obligation to pay the intervener.

10. CHAMPERTY AND MAINTENANCE ☞1—WHAT LAW GOVERNS.

The English doctrine and statutes regarding champerty and maintenance have never been adopted as the law of New Jersey, and it is by no means clear that they are enforceable in the state of Pennsylvania.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

11. EQUITY ⬤➡114—BILL OF INTERVENTION SHOULD SHOW WHERE CONTRACT WAS MADE.

Where complainant entered into contract whereby intervener was to share in recovery, bill of intervention should show where contract was made and was to be performed, for otherwise the common-law doctrine as to champerty and maintenance might apply to defeat rights there-under.

12. EQUITY ⬤➡72(1)—LACHES AS GROUND FOR REFUSING INTERVENTION.

Where complainant, who had contracted that the intervener should share in the recovery, instituted suit within apt time, the intervener's delay in asserting his rights cannot be denied on the ground of laches, unless defendant by reason of such delay changed his position when he obtained a release from the complainant, etc.

13. COURTS ⬤➡343—ADEQUATE REMEDY AT LAW NO BAR TO INTERVENTION.

The right of intervention, given by Supreme Court equity rule 37 (198 Fed. xxviii, 115 C. C. A. xxviii), cannot be denied on the theory that one desiring to intervene had an adequate remedy at law.

14. EQUITY ⬤➡114—ESSENTIALS OF BILL OF INTERVENTION.

Where complainant agreed that intervener should share in recovery, the intervener, who sought to become a party notwithstanding complainant had executed a release, must, as a condition to be allowed to intervene at a late date, set forth in his bill of intervention the release and the facts relied on to avoid it, so that defendant may have that matter disposed of on the pleadings.

In Equity. Bill by Bentley L. Rhinehart against the Victor Talking Machine Company. On motion to strike supplemental bill, filed by intervener, Robert L. Gibson. Motion granted, but intervener given leave to file an amended pleading.

McCarter & English, of Newark, N. J., for intervener.
French & Richards, of Camden, N. J., for defendant.

HAIGHT, District Judge. This is a motion to strike out the pleading filed by the intervener, pursuant to the permission granted by the order of this court, made on the 19th day of February, 1917. The defendant has assigned 24 reasons why it should be stricken out. Many of them are, however, merely reiterations of others, expressed differently. They present several questions, which will be separately discussed.

[1-6] 1. The intervener bases his right to intervene on rule 37 of the Supreme Court (198 Fed. xxviii, 115 C. C. A. xxviii), alleging that he has an interest in the litigation between the plaintiff and the defendant. At the time the order, permitting the intervention, was entered, I considered that the intervener should file some formal pleading, other than the petition upon which the order was made, setting up his interest or right, and to which both the defendant and the plaintiff could plead, so that the issues could be properly framed. He has attempted to carry out this direction by filing what he has termed a "supplemental bill."

It is first objected by the defendant that the matters set up therein will not support what is commonly known to equity practice as a "supplemental bill." I think that this position is undoubtedly correct; but, as counsel for the intervener contends, the name given to the

pleading is of little or no importance, provided that the pleading itself properly sets forth the intervener's right or interest in the litigation, and is drawn so that it may be answered by any of the parties entitled to answer it. While it is undoubtedly the general rule in equity that all persons materially interested, either legally or beneficially, in the subject-matter of a suit, are to be made parties to it, so that there may be a complete decree, binding upon them all, and that a court will, sua sponte, dismiss a bill, if it appears that to grant the relief prayed for would injuriously affect persons interested in the matter, who are not parties to the suit (Minnesota v. Northern Securities Co., 184 U. S. 199, 235, 22 Sup. Ct. 308, 46 L. Ed. 499), it is also the rule, with one or two exceptions, that a stranger cannot be admitted, on his own motion, as a party to a pending suit, without the plaintiff's consent, unless there be a statute enabling him to do so (Shepard v. N. J. Consolidated Water & Light Co., 73 N. J. Eq. 583, 74 Atl. 140; French v. Gapen, 105 U. S. 509, 525, 26 L. Ed. 951).

Equity rule 37 of the Supreme Court, of course, has the same effect as a statute. Hence the general equity practice affords no precedents for the exact method by which the intervener is to assert his rights, or the form or designation of the pleading by which this is to be done. Nor is there any well-defined practice in these respects, in the states where the statutes permit intervention. It is clear, however, that there must be some formal pleading, and that it should set forth facts sufficient to entitle the intervener to intervene and to the relief prayed for, and that the rules applicable to pleadings in general apply with equal force to a pleading in intervention. See 14 Stand. Encyc. of Procedure, 321 et seq. In Leary v. U. S., 224 U. S. 567, 32 Sup. Ct. 599, 56 L. Ed. 889, Ann. Cas. 1913D, 1029, the pleading by which the intervener sought to assert her rights was spoken of as "the bill of intervention."

As the intervener's rights in this case are those of a plaintiff, I think that his pleading, likewise, may be properly designated as a "bill of intervention." As such, it undoubtedly should call for an answer from, and be filed against, the complainant, as well as the defendant. As it does not do so, it is defective in this particular at least. Consequently the motion to strike it out must prevail on this ground, if upon no other. This conclusion makes it really unnecessary to decide any of the other questions. As, however, I think the intervener should be permitted to file an amended pleading, and as those questions will undoubtedly arise again, I have deemed it proper to give my general views on them.

[7-9] 2. It is urged now, as it was at the time the permission to intervene was granted, that upon the face of the pleading the intervener has no such interest in the subject-matter of the litigation as would justify his admission as a party thereto. I had thought that this phase of the case was settled, so far as I could settle it, at the time the order before mentioned was made. However, I have re-examined the question, and considered it more carefully than I was able to at the time I made the order. The view which I entertained at that time has in no respect been shaken. Undoubtedly an intervener should have some

interest in or claim to the demand in suit, or some connection with, interest in, or lien upon the subject-matter of the litigation, before he should be permitted to intervene. Glass v. Woodman, 223 Fed. 621, 622, 139 C. C. A. 167 (8th Cir.); Smith v. Gale, 144 U. S. 509, 517, 519, 12 Sup. Ct. 674, 36 L. Ed. 521. As before stated, this interest must undoubtedly be set up in the bill of intervention, in the same manner as would be required if the bill were an original one, except as hereinafter mentioned. The "supplemental bill" is not open to any objection in this latter respect. The important question is whether the facts set forth therein demonstrate that the intervener has such an interest in the litigation as, within the rule before mentioned, entitles him to intervene.

The contract between the plaintiff and the intervener, upon which the latter bases his interest in the litigation, undoubtedly constitutes either an equitable assignment of one-half of any moneys which the plaintiff may recover in this litigation, or its effect is to create an equitable lien thereon. It answers all of the requirements stated by Judge Rellstab, in In re Stiger (D. C.) 202 Fed. 791, affirmed 209 Fed. 148, 126 C. C. A. 96, to be necessary for a valid equitable assignment. It makes a present appropriation of a part of the fund to be recovered in the suit, and is not, under any permissible construction, a mere promise to pay out of a particular fund. See, also, 3 Pomeroy's Equity Jurisprudence (3d Ed.) § 1280. In addition, if by any possibility the construction before mentioned is not a proper one, there would seem to be no doubt, under the United States Supreme Court decisions, but that the agreement creates an equitable lien upon any fund which may be recovered by the plaintiff in the suit. If it could be considered that there was merely an agreement to pay, as distinguished from a present transfer, the contract unquestionably indicates an intention on the part of both parties to make the fund to be recovered in this suit a security for the obligation to pay one-half thereof to the intervener, and thus would create an equitable lien thereon. Ingersoll v. Coram, 211 U. S. 335, 368, 29 Sup. Ct. 92, 53 L. Ed. 208; Barnes v. Alexander, 232 U. S. 117, 34 Sup. Ct. 276, 58 L. Ed. 530; Wylie v. Coxe, 15 How. 415, 419, 14 L. Ed. 753; McGowan v. Parish, 237 U. S. 285, 35 Sup. Ct. 543, 59 L. Ed. 955.

That part of the opinion in Trist v. Child, 21 Wall. 441, 447, 22 L. Ed. 623, which is cited by counsel for the defendant, was disapproved, as respects equitable liens, by the Supreme Court in Barnes v. Alexander, supra. The before-mentioned remarks in the former would seem to be applicable to an equitable assignment, as distinguished from an equitable lien. Having an equitable assignment of, or an equitable lien upon, part of the fund now in court, it is difficult to conceive why the intervener has not such an interest in the litigation as is contemplated by the Thirty-Seventh Supreme Court rule. Nor can I see how the fact that this right or interest accrued prior to the institution of the suit makes any difference on this point. I have not considered, on this phase of the case, the effect of the release set up in the defendant's supplemental answer to the original bill.

[10, 11] 3. It is next insisted that the agreement upon which the

intervener's rights are based is invalid under the rule against champerty and maintenance. On this phase of the case there is nothing in the "supplemental bill" to indicate where the contract was made, or where it was to be performed, except possibly that, as the defendant is a New Jersey corporation, it may be fairly gathered that the parties contemplated that the agreement would be performed in the state of New Jersey. The English doctrine and statutes regarding champerty and maintenance have not been adopted as the law of New Jersey. Schomp v. Schenck, 40 N. J. Law, 195, 29 Am. Rep. 219; Bouvier v. Baltimore & N. Y. R. R. Co., 67 N. J. Law, 281, 291, 51 Atl. 781, 60 L. R. A. 750; Bigelow v. Old Dominion, etc., Co., 74 N. J. Eq. 457, 490, 71 Atl. 153. Nor is it by any means clear that they are in force in the state of Pennsylvania, where, it is suggested by counsel for defendant, the contract was made. Dickerson v. Pyle, 4 Phila. (Pa.) 259; Chester Co. v. Barber, 97 Pa. 455; Ormerod v. Dearman, 100 Pa. 561, 45 Am. Rep. 391; Perry v. Dicken, 105 Pa. 83, 51 Am. Rep. 181; In re Murray, 2 Pa. Dist. R. 681; Commonwealth v. Dupuy, 4 Clark, 1, 6 Pa. Law J. 223; Gribbel v. Brown, 202 Pa. 10, 51 Atl. 587; Williams v. City of Phila., 208 Pa. 282, 57 Atl. 578; Fenn v. McCarrell, 208 Pa. 615, 57 Atl. 1108. In Chester County v. Barber, supra, Mr. Justice Paxson, at page 463, said:

"Nor need we stop to consider whether the agreement as set out in the narr. is champertous, nor whether the English statutes in respect to this offense are in force in this state."

As late as Fenn v. McCarrell, supra, it was said by a special master, whose opinion was adopted by the Supreme Court, that "it cannot be said with certainty that such contracts are void." He then cited Chester County v. Barber. As there is nothing to show definitely where the contract was made or was to be performed, it is unnecessary at this time to decide by what law its validity is to be determined. It was held by Judge Benedict, in the Circuit Court for the Eastern District of New York, in Blackwell v. Webster, 29 Fed. 614, that the validity of a similar contract was to be determined by the law of the place where made. Judge Deady, in the Circuit Court of Oregon, seems to have entertained the view that the law of the place of performance governs. Hickox v. Elliott, 22 Fed. 13, 23; Id., 27 Fed. 830, 838. To the same effect is Wharton on Conflict of Laws (3d Ed.) vol. 2, § 49a; Richardson v. Rowland, 40 Conn. 565, 572; Roller v. Murray, 107 Va. 527, 59 S. E. 421. I think that the new pleading by which the intervener is to be permitted to assert his rights should set forth the place where the contract in question was made, as well as where it was to be performed. If this is not done, it may very well be that the court, being without information as to where the contract was made or was to be performed, would have to apply the general rules of the common law. Edwards v. United States, 103 U. S. 471, 474, 26 L. Ed. 314. That this contract would be invalid under those rules would seem to be quite clear, although I do not definitely so decide. Peck v. Heurich, 167 U. S. 624, 630, 17 Sup. Ct. 927, 42 L. Ed. 302.

[12] 4. It is also urged that the intervener is guilty of such laches

in the assertion of his rights that he should not be permitted to intervene. Without attempting to determine whether the New Jersey statute of limitations has run against his claim, or whether a federal court, sitting in equity, should, by analogy, adopt the state statute of limitations, as it is well settled that it is not required to do, it seems to me that the question of laches cannot arise as between the intervener and the defendant, except in connection with the release set up in the defendant's supplemental answer. This release is not mentioned in the "supplemental bill." The intervener's rights, as they existed at the time the suit was instituted, were dependent upon and coextensive with those of the plaintiff. If, therefore, the complainant has asserted his rights in due time, and the intervener seeks merely to assert his rights in and to the original claim against the defendant, the mere fact that he has delayed in asserting those rights, standing alone, cannot conceivably have injured the defendant. If, however, the defendant has changed his position by reason of the prior nonassertion of the intervener's rights, a different question is presented. But on the face of the papers, as they stand at present, there is nothing to show that the intervener's delay has injured the defendant, or that the defendant is in a position to invoke the doctrine of laches.

[13] 5. The contention that the intervener should not be permitted to intervene, because he has an adequate remedy at law against the plaintiff, is without merit. If he has such a remedy, he is not, I think, necessarily confined to it, in a case such as this. Wylie v. Coxe, 15 How. 415, 419, 14 L. Ed. 753; Haines v. Buckeye Wheel Co., 224 Fed. 289, 297, 139 C. C. A. 525; Bowen v. Needles National Bank (C. C.) 76 Fed. 176. See, also, cases cited in 14 Stand. Encyc. Proced. p. 312, 313. Under the Supreme Court rules the right to intervene seems absolute, subject only to the discretion of the court to which the application is addressed.

[14] 6. Although I am not prepared to say that it is absolutely necessary that the intervener should set forth the before-mentioned release, and allege facts which will avoid its otherwise apparently conclusive effect, still I think that good pleading, as well as a proper exercise of discretion reposed in the court, in reference to permitting him to intervene, considering that he seeks to assert his rights at this late date, requires that he should do so, in order that it may be determined, upon the face of the pleadings, if possible, whether he has any rights which should now be protected. It would seem, under the doctrine announced by the Court of Errors and Appeals of this state, in Weller & Lichtenstein v. Jersey City, etc., Street Railway, 68 N. J. Eq. 659, 61 Atl. 459, 6 Ann. Cas. 442, that even though the release was procured by the defendant with full knowledge of the intervener's claim and interest, it is valid against him, because the agreement between the intervener and the complainant seems not to be an assignment of the cause of action, but rather of the sums to be recovered in the action. If, however, the release is invalid as against the plaintiff, the intervener may certainly avail himself of the rights of the former in that respect. So, if the validity of the release as against the plaintiff is not challenged, and its effect as against the intervener is sought to be avoided merely by the

fact that the defendant had notice of the intervener's rights, it would seem that the release would bar the intervener as well as the plaintiff. If this is so, I think that the defendant should be placed in a position where it can take advantage of such a situation on the pleadings, without the necessity of a formal trial or reference. The intervener's present pleading is, I think, therefore, in this respect also, defective. The amended pleading or bill of intervention must set out the release and the facts upon which its otherwise conclusive effect is sought to be avoided.

7. The motion to strike out the "supplemental bill" will be granted, but the intervener will be permitted to file an amended pleading (a bill of intervention) within 10 days from the date of the service upon his solicitor of a copy of an order entered hereon. The defendant will be required to file an answer or address a motion to the amended pleading within 20 days after the filing and service upon its solicitor of a copy of such amended pleading.