STATE ex rel. E. M. POPE v. GERMANIA BANK OF ST. PAUL.[1]

January 17, 1908.

Nos. 15,418, 15,419—(165, 166).

**Jurisdiction of Supreme Court.**

The supreme court is one of review, and, except in a few remedial cases, is vested by the constitution with appellate jurisdiction only, the nature of which confines it to such questions as, originating in an inferior court, have been there actually or presumptively considered and determined in the first instance. It has no authority to consider on appeal questions of fact not passed upon by the trial court.

**Insolvency Proceedings—Jurisdiction.**

The court initiating insolvency proceedings by the appointment of a receiver or assignee has and retains exclusive jurisdiction thereof and of the receiver or assignee for all purposes of adjusting in the same proceeding all conflicting interests, all matters arising out of or connected with the estate, including the settlement of the accounts of the receiver. and surcharging the same on account of losses occurring by reason of his negligence or mismanagement.

**Same.**

No other court has concurrent or other jurisdiction to hear or to determine such matters, but all should be heard by the court appointing the receiver or assignee and in the proceedings in which the appointment was made.

**Questions of Fact.**

Controverted questions of fact in any such proceeding may, however, be submitted to a jury for determination.

**Fee of Attorneys.**

The matter of the allowance of compensation to attorneys for receivers or assignees for extraordinary services, over and above the amount fixed for their general services, is within the discretion of the court.

**Surcharging Receiver.**

On the facts stated in the opinion it is *held* that the court below erred in not determining the question whether the receiver's accounts should be surcharged, as demanded by the creditors, for losses alleged to have resulted from his negligent management of the estate.

[1] Reported in 114 N. W. 651.

103 M.—9

**Refusal to Make Finding.**

Where the trial court expressly declines to pass upon a question of fact involved in the litigation before it, it is unnecessary, after its decision has been made and filed, to apply for amended findings covering the question the court declined to pass upon.

In July, 1899, Gustav Willius was appointed receiver of the insolvent Germania Bank of St. Paul in a proceeding brought by the attorney general in the district court for Ramsey county. The first, second, third and fourth accounts of the receiver, covering all transactions up to July 31, 1903, were examined and allowed. His fifth account was filed on October 23, 1904. His sixth account was filed on September 12, 1906. His seventh account was filed on May 29, 1907. On May 29, 1907, he also filed his petition asking for the allowance of the fifth and sixth accounts, which had been examined in part, and of the seventh account. In his petition he asked that James E. Trask, Esq., who had acted as one of the attorneys for the receiver, be allowed the sum of $1,750 in addition to what had been paid, and stated that Harris Richardson, Esq., and Stiles W. Burr, Esq., who had also acted as his attorneys, claimed greater compensation for their services than they had been paid. The holders of a large number of claims against the insolvent estate united in presenting objections to the allowance of these accounts, prayed that the accounts of the receiver be surcharged by various sums aggregating more than $80,000, and that he be removed.

The matter was heard before Olin B. Lewis, J., who made an order dismissing the petition for the receiver's removal, an order accepting his resignation, an order appointing John A. Lagerman as receiver in his place and directing the surrender to the new receiver of the property of the insolvent estate, and an order confirming and settling the three accounts in question, allowing the receiver the sum of $9,000, and Messrs. Richardson, Trask and Burr, respectively, the sum of $2,-000, $1,543 and $625, directing that the former receiver present at the time specified in the order a full account of all his receipts and disbursements, acts and doings subsequent to his last report, but holding open the question of the alleged negligence of the receiver and of his alleged liability on his bond for such negligence.

From the last mentioned order, except that portion which allowed Mr. Trask the sum of $1,543, and Mr. Burr the sum of $625, the objecting creditors appealed.    Remanded for further proceedings.

*B. H. Schriber, A. E. Horn,* and *W. W. Cutler,* for appellants.

The receiver was guilty of negligence in failing to institute the suits necessary to enforce the liability of stockholders "with all convenient dispatch" after the expiration of thirty days from the making of the assessment.   The receiver was appointed July 26, 1899.   By the order of his appointment he was authorized to institute actions to enforce the stockholders' liability.   This liability was not available and drew no interest until proceedings were instituted to enforce it, either under G. S. 1894, chapter 76, or by assessment under the law of 1899.   He did not begin proceedings to enforce this liability until twenty months after his third report, and until everyone who could invite delay by litigation had done so.   The order for assessment was made September 17, 1903.   It gave the stockholders thirty days in which to pay and directed the receiver to "institute and prosecute with all convenient dispatch" all proceedings necessary to enforce the collection of the assessment.   This gave the receiver no discretion.   No advice of counsel could alter the plain meaning and intent of the words here used.   If there are debts due the estate, the trustee is liable for a failure to adopt every means in his power to collect or secure the same. 28 Am. & Eng. Enc. (2d Ed.) 1068, notes 13 and 14; Royall v. McKenzie, 25 Ala. 363; Hunt v. Gontrum, 80 Md. 64; Lowry v. McGee, 40 Tenn. 269; Waterman v. Alden, 144 Ill. 90; Clapp v. Clapp, 49 Hun, 195, 206; Earle v. Earle, 93 N. Y. 104, 113, citing Story, Eq. § 1275; Clark v. Clark, 8 Paige, 153, 160; Schultz v. Pulver, 11 Wend. 363; Hollister v. Burritt, 14 Hun, 291; Keller's Appeal, 8 Pa. St. 288; Powell v. Evans, 5 Ves. Jr. 839; Wise v. Murphy, 5 Redf. 365; In re Angell, 131 Mich. 345, 350; Smith v. Smith (Ky.) 19 S. W. 595; Speakman v. Tatem, 48 N. J. Eq. 136, 151; In re Chambersburg Saving Fund Association's Appeal, 76 Pa. St. 203, 227, 228; Howland v. McLaren, 22 Grant, Ch. (U. C.) 231, 242.   The court must hold that Mr. Willius knew it was his duty to collect the stockholders' liability promptly.   (a) Because the law imposed the duty on

him and he is presumed to know the law. (b) Because in November, 1901, he reported to the creditors that he was then preparing to institute suit. (c) Because the court in its order of assessment, dated September 17, 1903, directed him to proceed with all convenient dispatch. (d) Because he admits he knew it was his duty. (e) Because he resigned. "Suicide is confession." We are not seeking to hold the receiver because either he or his counsel misconceived the law as to the running of the statute of limitations. That fact, be it as it may, has nothing to do with the legal issue in this case. The duty of the receiver was to proceed promptly. He was not warranted in waiting until he concluded that the statute of limitations was about to become a bar. Mr. Richardson's opinion as to the statute of limitations might go to the question of damages consequent by reason of delay, but not to the right to delay the litigation; especially so, in face of the positive instruction of the court which Mr. Richardson says he assisted in drafting. The rule of damage in cases of negligence is that the guilty party must respond to the extent of the actual loss which has been the result of his act. His liability is not restricted to the damages which he had in his mind at the time of committing the wrong, or the damages which he could foresee. 1 Sutherland, Dam. (1st Ed.) 74.

The receiver or trustee is entitled to rely upon the advice of his counsel only where that advice is taken in matters presumed to be outside the knowledge of an ordinary business man, and to require special legal knowledge or professional skill or experience. He cannot shield himself behind recommendations made by his lawyer which deal with ordinary business and administrative questions or with plain duties. And in order to exonerate himself upon that ground it must appear that he relied upon such advice and that it was responsible for his course. (a) There was no advice of counsel even suggesting any delay after September 29, 1904, or more than ten months prior to the operation of the statute as a bar. The only advice the receiver can claim is that, immediately after the assessment, Mr. Richardson advised him to wait until the appeal was decided; and then in May, 1904, he advised that he should not commence too many suits at once. (b) There was no ambiguity in the court's direction to the receiver in the order of assessment and no uncertainty about his duty. (c) A close

analysis of the evidence discloses that the real claim of the receiver is not that he was acting under the advice of counsel, but that he had delegated a discretion as to the discharge of a portion of his duties to counsel. The evidence discloses that the receiver did, as a matter of fact, instruct the attorney as to bringing of suits, but even if counsel for the receiver should contend that all matters relating to the collection of the stockholders' liability were delegated to Mr. Richardson, that would not relieve the receiver. The law is well settled on that question. The office of a trustee is one of personal confidence and cannot be delegated. If he does delegate it, he remains liable to the beneficiary, and is chargeable for all acts and omissions of his delegate and with all losses, whether occasioned by the latter's fraud, neglect, want of good faith or other cause. 3 Pomeroy, Eq.- Jur. § 1068; Seely v. Hills, 49 Wis. 473, 485; Hill, Trustees, 175; Perry, Trusts, §§ 287, 294; Hawley v. James, 5 Paige, Ch. 318, 487; Berger .v. Duff, 4 Johns. Ch. 368; Pearson v. Jamison, 1 McLean, 197; Saunders v. Webber, 39 Cal. 287, 289; Fry v. Tapson, L. R. 28 Ch. Div. 268.

The entire question of negligence was tried and submitted to the district court. It was the proper time and the proper proceeding. It should have been decided before the receiver's accounts were allowed, for the following reasons:

A. This was the appropriate proceeding. The creditors were brought into court on an order to show cause, directing that the accounts and each of them be examined for the purpose of allowance and confirmation and "such other action as may be proper." The objecting creditors appeared at the hearing and requested that the account be surcharged. Creditors may have the account of a trustee surcharged, if they can show that he has been guilty of fraud, bad faith or negligence in the conduct of the estate, and the proper place to do this is at the hearing of the account. Minneapolis Trust Co. v. Menage, 73 Minn. 441; In re Cornell, 110 N. Y. 351; In re Angell, 131 Mich. 345.

B. The case was fully tried. The creditors introduced competent evidence establishing the negligence of the receiver and the measure of his liability. If any of the stockholders, whom the creditors claimed to be stockholders, were not so in fact, the receiver had ample op-

portunity to show the fact.  He did not do it.  If any of the stockholders, whom the creditors claimed to have been solvent, were not, in fact, solvent, the burden was upon the receiver to show their insolvency.  This he did not do.  In other words, the burden was on the receiver to show why he had not collected the amounts due from the stockholders.  He made no such showing.  The amounts were lost and as far as the record is concerned, and as far as the creditors are concerned, the receiver and he alone is liable to respond for the loss.

C.  The receiver was not entitled to compensation until the question of his negligence was decided.  Cook v. Lowry, 95 N. Y. 103; Smith, Rec. 587; Clapp v. Clapp, 49 Hun, 195; Schwartz v. Keystone, 153 Pa. St. 283.

D.  Remitting the creditors to a subsequent action would, as a matter of law, endanger their right to recover from the surety of the receiver on his bond.  The surety contracts that "the said Gustav Willius shall justly and faithfully perform all his duties as such receiver in accordance with the law in such case made and provided and the orders of the court in the premises."  The liability of the surety is strictissimi juris.  His obligation cannot be extended beyond the express terms of his contract.  The surety contracted that the receiver should obey the orders of the court.  This contemplated that his accounts should be settled in the ordinary course of judicial procedure, which is that all matters affecting his liability shall be passed on by a court of equity, which is a court of conscience, and that the surety will guarantee that the receiver performs the orders that are based upon the amount which the court of conscience, after hearing according to the rules of equity, finds to be the amount in which the receiver is indebted to the estate.  The sureties did not contract that the receiver would pay any judgment recovered against him in a suit brought at law, after his accounts had been allowed.  Bank of Washington v. Creditors, 86 N. C. 323, at 326, citing High, Rec. § 120; State v. Gibson, 21 Ark. 140; 17 Enc. Pl. & Pr. 853; French v. Dauchy, 134 N. Y. 543, 545; Ludgater v. Channell, 15 Sim. 479; Thomson v. MacGregor, 81 N. Y. 592, 598.

E.  If it should be ascertained that the liability of Mr. Willius was more than $50,000 and the present order, which permits Mr. Willius to draw from the funds of the estate on account of his compensation,

is not modified, (the surety not being liable for more than $50,000,) the creditors will be compelled to look to Mr. Willius personally for any excess over $50,000 and will be deprived of the benefit of the $9,-000 in custodia legis, which was directed to be turned over to Mr. Willius by the order from which this appeal is taken.

F. The trial court attempted to determine many of the phases of the question of negligence and did not leave certain material phases of the question open for subsequent litigation. The court in its memorandum found as a fact that Mr. Willius acted under the advice of his counsel. The creditors claim that this part of the memorandum was unwarranted but if left to stand unmodified it will, as a practical proposition, be controlling on any court or jury attempting to pass upon the question of Mr. Willius' liability for negligence.

*Edward P. Sanborn,* for respondent Willius.

The evidence discloses the fact that the receiver acted in good faith under the advice of eminent counsel, and exercised the care of an ordinary prudent man in the administration of his trust. (1) The measure of his liability is the exercise of ordinary care. Good faith and such diligence as a man of ordinary prudence would exercise in dealing with his own property is required and nothing more. For mistakes in judgment he is not liable. For loss to the estate from conditions and events which he could not foresee he is not liable. He is not an insurer. Beach, Rec. § 817, p. 882; 27 Am. & Eng. Enc. (1st Ed.) 146, 148, and cases cited; 4 Cyc. 241; In re Robbins, 36 Minn. 66; Burrill, Assign. § 410, p. 565; 28 Am. & Eng. Enc. (2d Ed.) 1036, 1037; Lyon v. Foscue, 60 Ala. 468; Griffin v. Pringle, 56 Ala. 486; Fahnestock's Appeal, 104 Pa. St. 46. (2) This rule applies to the acts of a receiver in selecting and employing an attorney. If he uses ordinary care in making such selection and retaining such attorney in his employment, he is not liable for loss occurring through the misconduct or neglect of such attorney. This is so even where the attorney collects money belonging to a receiver and appropriates it to his own use and absconds. Beach, Rec. §§ 301, 330; In re Union Bank of Jersey City, 37 N. J. Eq. 420; 20 Am. & Eng. Enc. (1st Ed.)

121; Powers v. Loughridge, 38 N. J. Eq. 396. (3) If acting under legal advice a receiver or trustee has made an innocent mistake as to a doubtful point of law, he will not be held accountable for the loss. 27 Am. & Eng. Enc. (1st Ed.) 150; Miller v. Proctor, 20 Oh. St. 442; Appeal of During, 1 Harris (Pa.) 224; Neff's Appeal, 57 Pa. St. 91; Bradley's Appeal, 89 Pa. St. 514; Calhoun's Estate, 6 Watts, 185; Ellig v. Naglee, 9 Cal. 684; U. S. v. Church, 6 Utah, 9.

If the question of the liability of Mr. Willius for amounts which he did not actually receive is before this court at all on this appeal, it is by the rules and principles of law above stated, and upon which we rely, that his acts as receiver are to be tested. If he exercised ordinary care and acted in good faith under the advice of competent counsel, he cannot be charged with anything which he did not actually receive. We insist that the evidence establishes the fact that he did act in absolute good faith under the advice of eminent counsel, and that he exercised that degree of care required of a receiver or other trustee.

First. There was no negligence and no unnecessary delay in the administration of this trust prior to the date of the assessment on the stock made September 17, 1903. (a) There was no negligence on the part of the receiver in proceeding to enforce the stockholders' liability under chapter 272 of the Laws of 1899, and not under chapter 76 of the general statutes. Mr. Richardson consulted with the creditors and their attorneys, and they agreed that it was best to proceed under the law of 1899. (b) The creditors are estopped to claim that there was any delay in making the assessment or any negligence in proceeding under the law of 1899. Every creditor and every stockholder was notified of the proceeding at the time the petition for the assessment was filed. No creditor objected. The order making the assessment estops them to claim now that the receiver should have proceeded under chapter 76.

Second. But the appellants claim that the receiver is liable for $101,-052.53, alleged stockholders' liability, which he never received, because he did not bring suits against the whole 950 alleged stockholders between the date of the assessment, September 17, 1903, and July 27, 1905.

(a) The assessment was made by the court below September 17, 1903. An appeal was taken from the order making the assessment September 29, 1903. This is the case of Willius v. Mann, 91 Minn. 494. It was finally decided by this court March 21, 1904. The court below modified its order upon the assessment in accordance with the opinion of this court, May 27, 1904. While this appeal was pending involving the validity of the whole assessment, it certainly would not have been the act of a prudent man, or the exercise of ordinary care and caution, to institute suits against stockholders to enforce the payment of the assessment. It was first necessary to know whether there was an assessment. If suits had been brought the court would not have tried them until this appeal was decided. Mr. Richardson's advice was to wait until the appeal was decided.

(b) The order making the assessment provided: "Said receiver is hereby authorized and directed to institute and prosecute with all convenient dispatch such action or actions, or other proceedings, as said receiver may deem necessary and proper against each person or party so liable," etc. What suits or proceedings should be commenced and when was left to the judgment and discretion of the receiver. A large majority of the stockholders were poor and threatened to go into insolvency if suits were commenced, but promised to pay from time to time if they were not sued. The policy advised by Mr. Richardson and adopted was to get a decision in one case on all defenses that could be raised by stockholders, if possible, and use that as a precedent and thus avoid the expense of suits against every stockholder. The creditors approved this policy. During all this time there was pending in the federal courts the case of First Nat. Bank of Ottawa v. Converse, 200 U. S. 425, and Bernheimer v. Converse, 206 U. S. 516, commenced January 28, 1904, and decided May 27, 1907. In both of these cases the constitutionality of the law under which the assessment was made was involved. In the first case above named the question was not decided by the United States supreme court. It was never decided by that court until the Bernheimer case was decided. It was thought by Mr. Richardson and many other members of the bar that the supreme court of the United States might hold that law unconstitutional, and for that reason that it was wiser to commence few

suits and collect as much as possible without suits. Moreover it had been decided by the court below, in the case of the Bank v. Strait, that the reorganization of the bank was invalid because it never had $200,-000 of capital stock. It was thought that this was a defense for every stockholder, and if this question was ever raised in a suit on the assessment it would constitute a good defense for any stockholder, and prevent the collection of anything more on the stockholders' liability. In view of this situation it was thought best by Mr. Richardson to adopt the policy he did adopt and collect all that could be collected without bringing many suits.

(c) The receiver was not negligent in employing Mr. Richardson as his attorney. No one will contend that he was not a competent lawyer. The receiver was not a lawyer himself.

(d) Mr. Willius was not negligent in not discharging Mr. Richardson, and employing some other lawyer between March 21, 1904, and July 27, 1905. He did what any ordinary prudent man would do in the conduct of his own affairs in this respect. Mr. Richardson had conducted all the litigation connected with this receivership successfully. There had been much of it, covering a period of five years. He was familiar with all the details, books and records, connected with the estate. He had tried the Cronstadt cases and won them. He had obtained the order making the assessment, and tried the Mann case, in which this court sustained the order as modified. He had tried the Ramsey case in the probate court and won it. His appointment had been approved by the court and by the creditors. The receiver had the utmost confidence in him, and relied upon and followed his advice. It would have required six months or a year for any other lawyer to get the same information as to the condition of this estate, and the questions involved in suits to enforce the stockholders' liability which Mr. Richardson then had. It was not only not negligence on the part of the receiver to retain him as his attorney, but it would have been the grossest negligence to have discharged him and employed somebody else as the matter then stood and with the knowledge which the receiver and Mr. Richardson then had. In determining this question we must put ourselves in the situation in which Mr. Willius was at the time in question and consider the knowledge which he then had.

Subsequent events, which neither he nor anybody else could foresee, are not to be taken into account against him. During all this time it was believed that the statute of limitations commenced to run from the date of the assessment as modified by this court and not from the date of the appointment of the receiver. Mr. Richardson so advised the receiver.

(e) The law does not require of a receiver infallibility or the accomplishment of the impossible. Neither Mr. Willius nor anybody else could foresee that this court would hold that the statute of limitations commenced to run July 26, 1899, and not from the date of the order making the assessment. There were 950 supposed stockholders. Between May 27, 1904, and July 27, 1905, there are fourteen months in which it is now insisted that the receiver must have brought suits against each of these stockholders in order to protect himself from liability to pay the amount of their stock liability himself. It is claimed that he must also have exhausted the liability of the stockholders primarily liable first before he could maintain any action against those secondarily liable under the decision in the Mann case. That could not have been done by Mr. Willius or by any body else in fourteen months. No lawyer could have done it. The court could not have tried the cases if they had been brought.

After all is said that can be said, the proximate cause of any loss which has resulted or may result from the failure to commence suits to enforce the payment of the assessment upon the stock prior to July 27, 1905, is the mistake of the receiver and his attorney as to the time when the statute of limitations commenced to run. This was a mistake in law for which neither he nor his attorney is responsible. There was no decision of this court upon this question to guide them. The court which appointed the receiver held that the statute commenced to run from the date of the assessment. The probate court so held in the Ramsey case. The federal courts had so held. Deweese v. Smith (1901) 106 Fed. 438; Aldrich v. McClaine (1901) 45 C. C. A. 631; King v. Pomeroy (1903) 121 Fed. 287; McClaine v. Rankin (1905) 197 U. S. 154, 162. The supreme court so held as to an as-

sessment under this identical statute. Bernheimer v. Converse (1907) 206 U. S. 516, 534. It was therefore a question upon which the courts have differed. The receiver ought not to be held to be more infallible· than judges and lawyers upon a question of law. To make him liable for stock liability which he did not receive or collect, would be to punish him because he did not know in 1904 and 1905 what the decision of this court would be in 1907 on this question.

*Harold C. Kerr,* for respondent Richardson.

*James E. Trask,* for respondent Lagerman.

BROWN, J.

In July, 1899, respondent Willius was by the district court of Ramsey county duly appointed receiver of the Germania Bank of St. Paul, an insolvent banking corporation, and thereafter qualified and entered upon the discharge of his duties as such. At the time of and as a part of the order of appointment the court fixed the compensation of the receiver at the sum of $200 per month, subject to the further order of the court. The receiver, under authority of the court, employed Harris Richardson as his general counsel and adviser, whose compensation was fixed by the court at $2,000 per annum "until the further order of this court." The receiver continued in the discharge of his trust until July 15, 1907, when he resigned.

Prior to his resignation certain creditors had petitioned the court for his removal for alleged negligence in the management of the estate, in that he had failed to cause the commencement of proceedings. to enforce the statutory liability of the stockholders of the bank, in consequence of which a large amount of money was claimed to have been lost to the creditors. The petition for his removal also contained a prayer for the appointment of his successor and for an order directing the new receiver to institute suit upon the receiver's bond to recover the loss so alleged to have occurred through the receiver's neglect. Pending the hearing on this petition the receiver tendered his account to the court for adjustment and settlement, in which he asked for an additional allowance of attorney's fees to his counsel, Harris Richardson, in the sum of $3,000, for extra service rendered the estate, and an allowance to other special counsel rendered necessary by protracted

litigation. To the allowance and settlement of this account the creditors interposed numerous objections, concluding with the prayer that it be surcharged in certain respects, and particularly that the receiver be charged with the amount alleged to have been lost by reason of his failure to enforce the stockholders' liability before barred by the statute of limitations, the amount of which was alleged to exceed $50,000. The petition for the removal of Willius, his account, and the objections thereto, and the prayer that it be surcharged to the extent of the losses alleged to have occurred through his neglect, all came on for hearing before the court below at the same time and were tried together.

At the conclusion of the trial, but before a decision had been reached, Willius resigned, as already stated, and his resignation was accepted by the court. Thereafter the court made three separate orders in the matter: (1) Accepting the resignation of Willius and appointing his successor; (2) dismissing the petition for his removal; and (3) confirming and settling his fifth, sixth, and seventh accounts, filed with the court, thereby allowing $2,000 to Richardson as extra compensation and $9,000 to the receiver, the balance remaining due for his services computed on the basis of the order of the court originally fixing his compensation. Though the receiver's account thus settled was not presented as his final account, it was in fact final; for it included all transactions, receipts, and disbursements up to May 25, 1907, a short time prior to the hearing on the matters resulting in the order now before us for review, which were heard below June 22, 1907.

The question whether the receiver's account should be surcharged to the extent of the losses incurred by his alleged negligence in not enforcing the stockholders' liability was litigated before the court by both parties; but the court declined to determine the question. In the order settling the account the court, upon this branch of the case, incorporated the following special order, namely:

> Ordered, further, that all matters relating to the question of the alleged negligence and malfeasance of said Gustav Willius as such receiver, and relating to the losses, if any, therefrom to this estate, and his liability, or that of his bond therefor, arising out of any negligent act, failure, or omission of said

Gustav Willius as such receiver, be and are left open, to be determined in proper proceeding according to law, and that nothing herein shall operate to release said Gustav Willius or his bond in any manner from the responsibilities for any and all acts as such receiver.

The creditors acquiesced in the order accepting the resignation of Willius and in that by which a new receiver was appointed, but appealed from the order settling the receiver's account and allowing Richardson $2,000 for extra services.

The case in this court narrows down to two propositions: (1) Whether the court below erred in declining to determine the question whether the receiver's account should be surcharged as claimed by the creditors; and (2) whether the extra allowance to Richardson was authorized as a matter of law.

As stated above, the court expressly declined to pass upon the question of the negligence of the receiver in failing to enforce the stockholders' liability before the bar of the statute of limitations set in, the basis of the creditors' claim that the account should be surcharged, and referred that question to some other court, to be determined in an action to be brought by the new receiver for that purpose. The court, however, settled the account as rendered, with the reservation that the order should not in any manner affect or relieve the receiver from responsibility for any neglect of duty imposed by his trust. The merits of the contention that the receiver was chargeable with negligence, and hence that his account should be surcharged, were elaborately argued in this court; but the question is not properly before us.

The supreme court is a court of review, and, except in a few remedial cases, is vested by the constitution with appellate jurisdiction only, the nature of which confines the court to such questions as, originating in an inferior court, have been there actually or presumably considered and determined in the first instance. Dunnell Minn. Pr. § 1802; Johnson v. Howard, 25 Minn. 558; Northwestern Railroader v. Prior, 68 Minn. 95, 70 N. W. 869; Smith v. Kipp, 49 Minn. 119, 51 N. W. 656. We are concerned, therefore, respecting this feature of the case, only with the question whether the trial court erred in declining to deter-

mine the question in this proceeding. It was unnecessary for the creditors to make application to the court, after the rendition of its decision, for further findings upon this subject. The court had expressly declined to decide the question, and subsequent application would have resulted in a reaffirmance of the court's first position. It is unlike a case where a question of fact has been unintentionally overlooked by the trial court.

This question requires no extended discussion. It is elementary that the court appointing a receiver or assignee in insolvency proceedings has and retains exclusive jurisdiction over the proceedings and the receiver or assignee for all purposes, settling and adjusting, in the same proceeding, all conflicting interests, all controversies, and all matters arising out of or connected with the trust, all questions respecting the accounts of the receiver, allowances for his compensation, the compensation of his attorneys, agents, and necessary clerks. No other tribunal has concurrent or other jurisdiction to order or interfere with the receiver in any way in the conduct of the office, or to settle or adjust his accounts. High, Rec. 48; 28 Am. & Eng. Enc. (2d Ed.) 1061; Conkling v. Butler, 4 Biss. (U. S.) 22, Fed. Cas. No. 3,100; Smith, Rec. 593; Beverley v. Brooke, 4 Grat. 187.

This exclusive authority and jurisdiction includes the surcharging of the receiver's accounts for losses incurred through his mismanagement or negligence, and should in the orderly course of procedure be heard and determined in the receivership proceedings and by the court initiating and having jurisdiction of the same. Otherwise there would arise conflicts of authority between different tribunals assuming to act, and confusion in the adjudications affecting the rights and liabilities of interested parties would inevitably follow. Therefore the court first entertaining the proceeding by the appointment of a receiver must retain and continue its jurisdiction until the estate is finally closed by the settlement of the receiver's final account and his discharge. The settlement of the account includes all objections made thereto by creditors, all questions of bad faith, negligence, and mismanagement by the receiver, and should be determined on the final hearing. Minneapolis Trust Co. v. Menage, 73 Minn. 441, 76 N. W. 195; In re Angell, 131 Mich. 345, 91 N. W. 611; In re Cornell, 110 N. Y. 351, 18 N. E. 142;

State v. Gibson, 21 Ark. 140. There are several special reasons why the final accounting should include all charges of mismanagement by which the estate suffered loss, and for which it is sought to charge the receiver, only two of which need be referred to.

1. The question of negligence and mismanagement by the receiver should have an important bearing upon the amount of his compensation. If found guilty, the court would be justified in refusing to reward the neglect or misconduct, or the nature of the neglect charged might be such as to require a material reduction from what might otherwise be allowed, though not a refusal of any compensation whatever. In this particular case the order appealed from approves the receiver's claim of $9,000 as a balance due him, and, if the order stands without modification, he would be entitled to a credit of that amount in turning the assets in his hands over to the new receiver; whereas, if the court should sustain the charge of mismanagement made against him, and that his account should be surcharged, that amount might either be materially reduced or denied altogether. Cook v. Lowry, 95 N. Y. 103; Smith, Rec. 587; 23 Am. & Eng. Enc. (2d Ed.) 1105; In re Sheets Lumber Co., 52 La. An. 1337, 27 South. 809. This the court could do, notwithstanding the fact that it had by order previously fixed the compensation at a certain amount per month or year.

2. Another yet stronger reason why the question should be determined in the insolvency proceedings is that it is essential to fixing the liability of the receiver's bond. The sureties on this obligation are liable only in case the principal fails or refuses faithfully to execute his trust and abide by all orders of the court. Before suit can be brought against them the liability of the receiver must be determined on the final settlement of his accounts by the court having jurisdiction of the proceedings, or, as expressed in Smith, Rec. 77, a necessary prerequisite to a suit on a receiver's bond is an order of the court that the receiver render his accounts, or a rule to pay over any balance shown by an account rendered, and a default by him. The regular course of procedure, say the authorities, is to proceed against the receiver in the first instance, and, if he shall fail to comply with the order of the court, then obtain leave to sue on the bond. State v. Gib-

son, supra; Atkinson v. Smith, 89 N. C. 72; Bank of Washington v. Creditors, 86 N. C. 323. "Preliminary to the action the settlement of the account of the trustee is essential." French v. Dauchy, 134 N. Y. 543, 31 N. E. 1041. The case is analogous to those involving the administration of estates of deceased persons, in which no action against the administrator can be maintained until final decree of the probate court. Huntsman v. Hooper, 32 Minn. 163, 20 N. W. 127. And for the reasons already stated this final order can be made only by the court having jurisdiction of the proceedings.

In the case at bar the learned trial court undoubtedly deemed the question of the receiver's negligence a doubtful one, depending somewhat upon conflicting evidence, and a proper question, therefore, for the consideration of a jury. It is undoubtedly within the power of the court in proceedings of this kind to submit controverted questions of fact to a jury. But the issue should be framed and the jury impaneled in the particular proceeding, and not referred to another action to be brought, perhaps not in this particular case, in some other court of this or some other state, depending on the residence of the receiver when the action is commenced.

Our conclusion, therefore, is that the question of surcharging the receiver's account with the losses alleged to have resulted from his negligence should have been determined in this proceeding. It was litigated on the trial below, and, though the evidence upon the question respecting the amount the estate lost by the neglect complained of is not complete, yet certain amounts are definitely shown, which could have been made the basis of an order surcharging the account, if negligence had also been found. The proceedings must therefore be remanded for the determination of this question.

No question affecting the allowance of $2,000 to Harris Richardson for extra services, other than the authority of the court to award it, is presented by the record. The claim of his counsel that the question of Richardson's negligence is immaterial to the issues presented by the written objections of the creditors is sustained. The receiver presented his report, together with an application that Richardson's extra compensation and other items of expense in the administration of the trust be allowed, upon which an order of the court was made appoint-

103 M.—10

ing a day of hearing. Thereafter the creditors appeared and filed written objections to the account, specifically charging the receiver with negligence in the conduct of the trust, and demanding that he be charged with certain losses resulting therefrom. But no objections were made to the Richardson item, nor was he charged with negligence or other misdoing in his relation to the estate. The creditors, having made their objections to the account and presented them in written form, are bound by the allegations therein contained. The introductory clause of the objections reserving the right to interpose special objections to the account on the hearing is not sufficient to raise a question of this character. We therefore do not consider the claim now made that Richardson was guilty of negligence equally with the receiver, for the reason that it is not presented by the record, and pass to the contention that the court had no power to grant additional compensation.

It is the contention of the creditors that the original order fixing his compensation was tantamount to a contract between the attorney and the estate and precludes further allowance by the court. That order authorized the receiver to pay his counsel "at the rate of $2,000 per year, from the inception of said receivership and until the further order of this court, as and for attorney's fees herein." In our judgment this clearly left the matter of the attorney's compensation in the hands of the court, subject to revision by increasing or decreasing the allowance as the future circumstances of the case justified. Though the allowance of compensation to receivers and their attorneys fixed by the act of appointment may generally be considered as sufficient fully to compensate them for their services, the court may, in its discretion, grant additional allowances for extraordinary services made necessary in the progress of the trust proceedings. 23 Am. & Eng. Enc. 1069 (2d Ed.) and cases cited. The whole matter is within the discretion of the court. Olson v. State Bank, 72 Minn. 320, 321, 75 N. W. 378. This rule justified the court below in allowing this claim, and a fair view of the evidence discloses no reason for holding that the court abused its discretion in the premises, and the order of allowance is affirmed.

The case is remanded to the trial court for further proceedings in harmony with the views herein expressed.