HAINES v. BUCKEYE WHEEL CO. et al.

(Circuit Court of Appeals, Sixth Circuit.   July 20, 1915.)

No. 2746.

1. RECEIVERS ☞92—AUTHORITY OF RECEIVER—RIGHT TO PURCHASE GOODS ON CREDIT.

A receiver petitioned for authority to borrow money to carry on the business of the corporation, representing that there was on hand an unfinished stock of buggies of great value, and that to realize on the stock to best advantage it would be necessary to complete and sell them.   The court authorized the receiver to carry on the business, and, for the purpose of so doing, to borrow sums amounting to $5,000.   In his report, where the receiver prayed for the allowance of compensation, he failed to disclose that he had purchased goods on credit which were not yet paid for.   *Held* that, in view of the acts of the receiver, the order of the court allowing him to borrow money to carry on the business did not authorize him to make purchases on credit, for in the last analysis the purchasing of goods on credit is practically the same as the incurring of debts for monetary advances, and the receiver's right to borrow money was restricted to specified amounts.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 169; Dec. Dig. ☞92.]

2. RECEIVERS ☞166—LIABILITY OF—CREDITORS.

The receiver conducted the business at a great loss until practically all of the assets were exhausted.   Thereafter those who had sold merchandise to the receiver filed an intervening petition claiming that he was personally bound to pay such claims, and the bank which had loaned the receiver money moved to require the return of the receiver's compensation.   The return was ordered and the receiver was directed to pay the merchandise creditors.   It appeared that when the compensation which was allowed under a misapprehension was returned there would be sufficient funds to pay the bank and the expenses of receivership.   *Held,* that the right of the merchandise creditors could not be defeated on the ground that, if the receiver acted without authority, no damages resulted to the trust estate, and hence no charge could be made against him, the receiver and the sellers being in pari delicto, for such sellers were his own creditors, and the trust estate would not be decreased or diminished by his payment.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 319; Dec. Dig. ☞166.]

3. PARTIES ☞40—INTERVENTION—ACTION BY RECEIVER.

Where a receiver purchased goods on credit without authority, the sellers could file an intervening petition in the receivership proceedings to require the receiver to pay into court the amount of their claims, notwithstanding they could maintain independent actions against the receiver and on his bond.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 60–63, 65–67; Dec. Dig. ☞40.]

4. RECEIVERS ☞92—LIABILITY.

Where a receiver who was authorized to borrow money to carry on the business of a corporation did so, and the business resulted in a great loss, the receiver, though liable personally for the claims of persons from whom he made unauthorized purchases on credit, is not liable for the amounts borrowed.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 169; Dec. Dig. ☞92.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. RECEIVERS ⊚═◦92—LIABILITY—CLAIMS.

Where a receiver, who was carrying on the business, made purchases of goods on credit without authority, he is not, though personally liable for the amount of such purchases, liable for the compensation of attorneys of the sellers; the payment of his unauthorized debts being all that equity can demand from him.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 169; Dec. Dig. ⊚═◦92.]

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Intervening petition by the Buckeye Wheel Company and others against H. H. Haines, receiver of the New Decatur Buggy Company, in which the First National Bank of Middletown, Ohio, made a motion. From a judgment for petitioners, the receiver appeals. Modified and affirmed.

See, also, 203 Fed. 225, 121 C. C. A. 431.

On June 25, 1907, appellant was appointed receiver of the New Decatur Buggy Company, a corporation, by a decree made and entered by the lower court in the case of Harry W. Quackenbush v. Harry H. Elwood et al. Four days later and on June 29, 1907, the receiver petitioned the court for authority to continue the business of the corporation and to borrow the sum of $3,000 for that purpose. His petition was granted and an order made and entered accordingly. Inasmuch as the decision of this controversy hinges upon the construction to be₀given to this order of the court, the receiver's petition and the order are here set forth in full:

Petition.

"Your petitioner, H. H. Haines, having been duly appointed receiver herein, represents to the court:

"First. That in his opinion it is proper and necessary that he should make an inventory and appraisement of all the property and assets coming into his hands as said receiver, and he therefore respectfully suggests to the court that the court appoint three judicious disinterested persons as appraisers of all said porperty and assets.

"Second. Your petitioner further represents that in his opinion it is wise and expedient and for the best interest of the creditors and other parties interested that the business of the New Decatur Buggy Company should be continued by him as receiver for the following reason, to wit: There is on hand in the factory of said company at Middletown, Ohio, a large quantity of stock and materials for the manufacture of buggies and other vehicles, and that there are in various stages of manufacture buggies and other vehicles in said plant; that said stock and materials and partly manufactured products are of an approximate value of $40,000 to $50,000.

"Your petitioner further says that the spring season for the manufacture and sale of buggies and other vehicles is now at hand; that said spring season has been delayed by the rains and inclement weather of the past spring and summer; and that said period for the sale of said products will be most profitable commencing about July 1, 1907, and continuing until about November 1, 1907.

"Your petitioner further says that, unless said stock and materials shall be so manufactured into the products of said concern, said stock and materials will have to be sold at a great sacrifice and work great loss to both creditors and parties interested.

"Your petitioner further says that said company now has many orders for manufacture and shipment of goods, and that it can procure many more; that in the opinion of your petitioner orders can be obtained of such a number and size as to keep said factory continually and profitably in operation.

⊚═◦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Your petitioner further says that said factory having been closed so recently, the necessary working force thereof can be readily assembled for the purpose of running said plant.

"Wherefore, your petitioner prays for an order authorizing him to reopen said factory and employ the necessary working force and continue said business until the further order of said court.

"Third. Your petitioner says that it will be necessary in order to manufacture said goods and reopen said factory and employ said hands to use certain money, and that there is nothing on hand in the treasury of said company, and he therefore prays for an order of this court authorizing him to borrow money, not to exceed $3,000, at a rate of interest not exceeding 6 per cent., and that he be authorized to issue receiver's certificates or other evidence of indebtedness therefor."

### Order.

"This day this cause came on to be heard on the application of H. H. Haines, receiver herein, praying for an order appointing appraisers to make an inventory and appraisement of the property and effects coming into his hands as said receiver, and was submitted to the court, and the court being fully advised in the premises finds that it is proper and necessary to grant said order, and does hereby order that said inventory and appraisement be made by said receiver, and that R. B. Edson, W. T. Harrison, and L. T. Palmer, be and they hereby are appointed appraisers for said purpose.

"Second. Thereupon this cause came on for further hearing on the application of said receiver for an order of court to reopen the factory of the New Decatur Buggy Company, referred to in the application, and to employ the necessary working force, and to continue said business, and was submitted to the court.

"On consideration whereof the court finds that it is necessary and for the best interests of the creditors and all parties interested that said order be granted, and the court does hereby order said receiver to reopen said factory, employ the necessary working force and continue said business until the further order of this court.

"Third. Thereupon this cause came on for further hearing upon the application of said receiver for authority to borrow money, and was submitted to the court.

"On consideration whereof the court finds that it is proper and necessary for the profitable operation of said plant that said order be granted.

"It is therefore ordered by the court that said receiver be and he is hereby authorized and empowered to borrow money for the purpose of continuing said business in a sum not to exceed $3,000 at a rate of interest not to exceed 6 per cent., and he is hereby authorized and empowered to issue receiver's certificates or other proper evidence of indebtedness therefor."

Pursuant to the authority so granted, the receiver immediately borrowed from the First National Bank of Middletown, Ohio (hereinafter called the "bank"), the sum of $3,000, and gave his promissory notes therefor. On July 25, 1907, the receiver again petitioned the court for authority to borrow an additional $2,000 "in order to carry on said business and meet the pay roll and other necessary expenses incurred by him as receiver." On the same day the court made an order authorizing him to borrow "money not exceeding $2,000, in addition to the money heretofore authorized to be borrowed by him." Immediately thereafter he borrowed $1,000 from the bank upon his promissory note. These sums of money aggregating $4,000, so borrowed by the receiver, with interest, constitute the claim of the bank.

The business of the New Decatur Buggy Company, which was continued by the receiver, consisted largely of assembling the parts of buggies which it purchased from dealers and manufacturers and then selling the completed product. Without applying for or obtaining other authority than that contained in the order of June 25, 1907, the receiver commenced at once to purchase on credit additional merchandise and parts of buggies from the Buckeye Wheel Company and many other concerns. He continued to operate the factory for about eight months, and, during that time, his purchases on credit aggregated about $34,000 and his payments thereon about $20,700, leaving a balance of up-

wards of $13,000 then owing by him. When the factory finally shut down in February, 1908, he owed the Buckeye Wheel Company alone more than $4,000 and his other merchandise creditors more than $9,000. Since then he has paid on these accounts about $7,200, leaving a balance of about $5,800 still owing to such creditors. The business was conducted at an enormous loss, and, through shrinkage in values as well as losses in operation, the receivership has terminated disastrously for all concerned. The net results are that the creditors of the New Decatur Buggy Company have received nothing, the entire estate (appraised at upwards of $93,000) has been lost, and the receiver now has in his hands about $4,000 with which to pay debts, amounting to nearly $10,000 owing by him to the bank and other creditors.

On September 28, 1908, the bank filed its intervening petition against the receiver to recover the moneys borrowed by him and evidenced by his notes. The receiver answered the petition, admitting the indebtedness, but presenting a counterclaim in an amount larger than the indebtedness. In its reply the bank denied liability upon the counterclaim. On May 5, 1911, a decree was made by the District Court disallowing the counterclaim of the receiver and ordering and directing him to pay to the bank the sum of $4,000 with interest out of the funds and assets in his hands. This decree was affirmed by this court. Haines v. First National Bank of Middletown, Ohio, 203 Fed. 225, 121 C. C. A. 431.

On April 14, 1910, the receiver filed his first report from which it appears that he had then sold and converted into money all of the property which had come into his possession, and that "his total receipts from the operation of said plant and the running of said business, the collection of accounts, sales of property, and from all other sources up to March 21, 1910, amounted to $89,-725.44; his disbursements for the same period amounted to $81,041.63, leaving a balance of cash on hand for distribution of $8,683.81." Attached to his report as exhibits are tabulated statements of his receipts and disbursements. Among the receipts appears the $4,000 borrowed from the bank, and among the disbursements appear the payments to his merchandise creditors aggregating $28,015.70. The report contains no hint of the fact that he was still owing upwards of $5,800 to his merchandise creditors. While the record is imperfect and incomplete as to the court's action upon this report, it may fairly be inferred that the report was received, the account approved, and the receiver allowed $2,000 as compensation for his own services and $2,000 for the services of his attorneys. More than three years later and on May 12, 1913, the receiver filed his second report from which it appeared, for the first time, that he was still owing the Buckeye Wheel Company and 13 other merchandise creditors the sum of $5,835.63. The second report also shows that the receiver's debt to the bank was still unpaid and that, after paying $2,000 to himself and $2,000 to his attorneys and other small incidental expenses, he had in his hands the comparatively small sum of $3,854.08.

On June 2, 1913, the bank filed a motion stating that the receiver had failed to pay its claim and asking for an order requiring him to carry out the provisions of the decree of May 5, 1911, as affirmed by this court, and to pay to it the amount therein directed to be paid with interest. On June 7, 1913, the Buckeye Wheel Company filed its intervening petition in behalf of itself and other creditors of the receiver in like situation, alleging therein that the receiver had borrowed $4,000 from the bank pursuant to the authority conferred by the orders of June 29 and July 25, 1907, that the receiver had purchased from petitioner goods and merchandise of the value of $7,296.54 upon which he had paid $5,340.50, leaving a balance unpaid of $1,956.04, that the receiver had purchased of petitioner and other merchandise creditors goods and merchandise to the amount of $34,365.51 upon which he had paid $28,529.88, leaving a total indebtedness to merchandise creditors then due and payable of $5,835.63, and that, after applying the moneys in his hands upon the payment of the bank's claim, nothing would be left with which to meet his obligations to his merchandise creditors; charging that the receiver's purchases of goods and merchandise on credit were all made without authority and in violation of the orders of the court, and "that the purchase of said goods and merchandise and the contracting of said indebtedness by said receiver, as to any excess over said $5,000, were wasteful, extravagant, and such conduct as to consti-

tute negligence and faulty management on his part," and praying for an order allowing its claim and directing the receiver personally to make payment if he had not sufficient funds in his hands as receiver to meet his obligations. In his answer to the intervening petition, the receiver admitted the indebtedness, denied lack of authority to purchase goods and merchandise on credit, and denied personal liability.

The motion of the bank and the petition of the Buckeye Wheel Company were heard together. At the hearing, all charges of wastefulness, negligence, and mismanagement were waived and withdrawn. The District Court found that the receiver acted without authority and in contravention of the court's orders in contracting indebtedness for goods and merchandise,' and that his accounts should be surcharged for the purpose of meeting and paying such unauthorized indebtedness. After reciting the findings, the decree proceeds as follows:

"It is now ordered, adjudged, and decreed that said receiver's accounts be surcharged, and that he repay into this court within thirty days from the entry hereof the amount heretofore allowed him as compensation for services, to wit, $2,000; that, in addition to said sum of $2,000, said receiver shall pay into this court within 30 days from the entry hereof a sum which shall be sufficient, taken together with the foregoing and the amount in his hands and with the amount now on deposit in the First National Bank of Middletown, Ohio, to pay the costs herein, the debt of said bank as aforesaid, and the debts of said goods and merchandise creditors (as above set forth).

"Of the funds in said receiver's hands he is ordered to make distribution as follows, viz.: He will first pay and deduct the costs, if any, which are due at this date and which may be properly and necessarily incurred in carrying out this decree and order of distribution. He will permit the First National Bank of Middletown, Ohio, to retain said sum of $216.90 held by it to the credit of said receiver, and apply same towards the payment and satisfaction of the debt of said bank. The balance in his hands, he will forthwith pay to the said bank or to its attorneys, Benjamin F. Harwitz and Joseph W. O'Hara.

"Of the funds to be paid into court by the receiver, as aforesaid, he is ordered to make distributions as follows, viz.: He will first pay the amounts hereafter fixed by this court as allowances to the solicitors for the Buckeye Wheel Company, he will then pay the balance to said bank and merchandise creditors according to the amounts then due upon their respective debts as above mentioned."

Gilbert Bettman, of Cincinnati, Ohio, for appellant.

Pogue, Hoffheimer & Pogue, H. B. Mackoy, and J. W. O'Hara, all of Cincinnati, Ohio, for appellees.

Before WARRINGTON and DENISON, Circuit Judges, and SESSIONS, District Judge.

SESSIONS, District Judge (after stating the facts as above). [1] Was the receiver authorized to purchase goods and merchandise on credit and thereby to incur indebtedness in excess of $5,000 expressly authorized by the orders of the court? This is the controlling question in the case, and the answer thereto will make the solution of the other problems either easy or unnecessary. All parties concede that the authority of the receiver must be found in the orders of the court or it did not exist. The receiver contends that the court's order directing him to "continue the business" impliedly conferred upon him the power to incur debts for goods and material reasonably necessary in the conduct of such business and that the express authority to borrow not to exceed the sum of $5,000 was an addition to and not a limitation upon his power to bind the estate in his hands for merchandise debts. Appellees insist, and the court found, that:

"The receiver was authorized to carry on the business, and, for the purpose of doing so, was expressly authorized to borrow a sum of money; (and) this was not only a limitation of the amount of money he might borrow for the purpose but was a negation of any authority to involve the receiver, as such, in any expense in running the business greater than the amount authorized to be borrowed for that purpose."

A naked order of court requiring affirmative action of any kind by a receiver carries with it, by implication, the power to do whatever is reasonably necessary in its performance. But, in a plainly doubtful case, involving transactions of magnitude and not matters of minor detail, authority to act cannot be predicated upon mere inference or uncertain implication, because, in such case, it is not only the right but the duty of the receiver to inform the court fully as to the facts and to ask for instructions. As was said in Re Angell, 131 Mich. 345, 350, 351, 91 N. W. 611, 612:

"A receiver is an officer of court, and amenable to it for a proper discharge of the trust confided to him. When he is in doubt as to what he ought to do, he should take the advice of the court."

By so doing he can at all times protect himself, and if he neglects or refuses to avail himself of the ample and effective shield which the law thus provides and places in his hands, he acts upon his own responsibility and at his own risk and peril.

In the instant case, the receiver, in his petition for authority to continue the business and to borrow money for that purpose, did not inform the court that it would be necessary to buy additional material. On the contrary, the language used fairly imports that the material on hand, stated to be of the value of between forty and fifty thousand dollars, was all that would be needed at least until moneys could be realized from the sales of finished buggies. His statement was that it would be for the best interests of the estate to reopen the factory and manufacture the stock and material on hand into finished product, and his prayer was for authority to continue the business and for that purpose to borrow not to exceed $3,000 in the first instance and later an additional $2,000. The order of the court was:

"That said receiver be and he is hereby authorized and empowered to borrow money for the purpose of continuing said business in a sum not to exceed $3,000."

If the purchase of additional material was necessary, it was an essential part of the continuance of the business for which the receiver had been authorized to borrow money. Buying goods on credit is the equivalent of borrowing money to pay for such goods. There is no legal difference or distinction between an indebtedness for merchandise purchased and one for money borrowed. In either case, if the receiver acts within his authority, the receivership property is in effect pledged for the payment of the debt. The record shows that the receiver's outstanding indebtedness for goods purchased has at all times been more than $5,000, and at the end of the active operation of the factory was more than $13,000. During the seven or eight months while he was creating this large indebtedness, he made no mention thereof to the court. His first report was filed in April, 1910, after he had con-

verted all of the property into money and more than two years after he had ceased to operate the plant. In that report he stated that he had paid out $28,015.70 for merchandise, but he was strangely silent upon the subject of his having purchased such merchandise on credit. He was then seeking compensation for his services as receiver and represented that he had "a balance of cash on hand for distribution of $8,683.81," an amount more than sufficient to meet his debt to the bank and to pay for the services of himself and his attorneys. He carefully concealed the fact that he was still owing to his merchandise creditors nearly $6,000, an amount considerably larger than the balance of money on hand after payment of the principal, to say nothing of interest, of his authorized debt to the bank. That the court would not have awarded him compensation for his services if the true condition of the estate had been revealed is evidenced by the subsequent decree requiring and commanding him to repay the amount which had been allowed upon a showing which was nothing less than a misrepresentation of the facts. It .may be true that the failure of the receiver to inform the court of earlier conditions, his concealment of later conditions, and the final filing of a misleading report are not in themselves a sufficient negation of authority to buy goods and material on credit. Nevertheless, his whole course of conduct has an important and legitimate bearing upon the question of his authority to incur debts of that kind and upon the ultimate question of whether his account should be surcharged so as to provide for the payment of such debts.

We conclude that the original order of the court, construed and interpreted in connection with the petition upon which it was based and viewed in the light of the subsequent conduct of the receiver, did not authorize him to make purchases on credit and to bind the estate in his hands for the payment of the debts so created. The language of the order is quite certain and definite. He was authorized to borrow a fixed sum of money for the specific purpose of continuing the business. In other words, with a working capital consisting at most of the money borrowed from the bank and the funds of the estate derived from the sale of its products or otherwise, he was required to do a cash business.

There are few, if any, reported decisions of the courts upon the precise question here presented. Analogous cases brought to our attention support and sustain, directly or indirectly, the findings and decree of the District Court. State Central Savings Bank v. Fanning Ball-Bearing Chain Co., 118 Iowa, 698, 92 N. W. 712; Kirker v. Owings; 98 Fed. 499, 39 C. C. A. 132, and cases there cited; Gutterson & Gould v. Lebanon Iron & Steel Co. (C. C.) 151 Fed. 72; Hitner v. Diamond State Steel Co. (D. C.) 207 Fed. 616. No case to the contrary has been cited, and, so far as we are aware, none has been found.

The case of Cake v. Mohun, 164 U. S. 311, 17 Sup. Ct. 100, 41 L. Ed. 447, cited and relied upon by appellant, is not an authority in his favor. There the receiver was expressly authorized by the order of the court "to carry on and manage the business of keeping said hotel in substantially the same manner as it has heretofore been carried on." No other restriction or limitation was placed upon his power to in-

cur debts in the conduct of the business which he was directed to continue. As said by the court:

"Under such circumstances, the power of the receiver to incur obligations for supplies and materials incidental to the business follows as a necessary incident to the receivership."

In the instant case, the authority of the receiver to incur debts in continuing the business was positively and specifically limited and restricted. The difference between the two cases is marked and vital. In the one the authority conferred was general and practically unlimited, in the other special and definitely restricted.

[2] Counsel for appellant further urge with much earnestness and insistence that, if the receiver acted without authority, no damages are shown to have resulted to the trust estate from his unauthorized purchases of goods and material and hence no charge against him can be made; that, in such case, interveners have no right to participate in the funds in the receiver's hands, and therefore no right to compel him personally to increase the receivership funds; and that persons dealing with the receiver were bound to know the extent of his authority and had no more right to sell than he had to buy and in these transactions the receiver and his merchandise creditors were in pari delicto, and therefore the latter are not entitled to the relief which they seek. In these contentions, counsel misapprehend the nature and lose sight of the primary object and purpose of this proceeding. This controversy is not between the receiver and the general creditors of the New Decatur Buggy Company, nor between the creditors of the receiver and the creditors of the defunct corporation, but strictly and solely between the receiver individually and his own creditors. The general creditors of the insolvent estate are neither active parties to this proceeding nor interested in the moneys sought to be recovered. The entire property of the estate and the goods and material sold to the receiver have been lost. The fund now on hand is insufficient to pay the claim of the bank, and, if the receiver be compelled to restore the $2,000 mistakenly allowed him as compensation, the fund will still be barely sufficient to pay that claim. The bank is the owner and holder of the notes of the receiver which he was expressly authorized to make and, as such, claims the entire fund now in the possession of the receiver. The other appellees are seeking to compel the receiver personally to pay the balance of the purchase price of goods which were sold to him in good faith and have gone into the estate, but which he had no authority to buy. The right of the bank to priority of payment is conceded by the merchandise creditors and as to all others has been adjudicated in the former suit. It follows that whatever moneys he personally is compelled to pay into court must be used to satisfy the claims of his merchandise creditors. The trust estate will be neither increased nor diminished thereby. This is as it should be, because, even if it were true, as urged by the receiver, that the trust estate has not been injured financially by his purchases of goods on credit, his own creditors have been injured and the exact measure of the damages resulting directly to them from his unauthorized action is the amount of their unpaid

claims. They and not the general creditors of the estate have suffered the injuries which they seek to have redressed.

[3] It is possible that appellees could have brought independent suits against the receiver and the surety upon his bond (In re Erie Lumber Co. [D. C.] 150 Fed. 817), but they were not confined to that remedy. They also had the undoubted right to intervene in the case wherein the receiver was appointed and to pursue their remedy in the court whose officer, by his unauthorized acts, has caused the losses which they have sustained. The receiver has not been discharged. He is still accountable to the court of his appointment, not only for his authorized acts, but for whatever he has done in the name of the court and under color of his office although outside the scope of his authority. As was said by the Supreme Court of Minnesota in the case of State ex rel. Pope v. Germania Bank of St. Paul, 103 Minn. 129, 143, 114 N. W. 651, 652:

"It is elementary that the court appointing a receiver or assignee in insolvency proceedings has and retains exclusive jurisdiction over the proceedings and the receiver or assignee for all purposes, settling and adjusting, in the same proceeding, all conflicting interests, all controversies, and all matters arising out of or connected with the trust, all questions respecting the accounts of the receiver, allowances for his compensation, the compensation of his attorneys, agents, and necessary clerks."

See, also, the cases hereinbefore cited.

Upon principle, as well as authority, this must be so. It is unthinkable that a court of equity can be powerless either to protect the integrity of its own faith and credit or to grant relief to those, who, without active fault on their part, have been wronged by its accredited officer, by surcharging his account with the loss so occasioned.

[4] The receiver ought not to be required personally to pay any part of the bank's claim. He was authorized to borrow the money. All charges of waste, negligence, and mismanagement have been waived and withdrawn. It does not appear that his unauthorized purchases of goods and merchandise resulted in the depletion or diminution of the trust estate and trust funds available for the payment of his authorized debts. Neither in its intervening petition nor in its present motion does the bank ask for a personal decree against the receiver. The decree in its favor, affirmed by this court, declared that the bank "has a valid and subsisting lien upon the funds and assets now in the hands of said H. H. Haines, receiver of the New Decatur Buggy Company, in the sum of $4,000 with interest," and ordered and directed him "to forthwith pay to said bank the said sum and interest out of said funds and assets now in his hands as such receiver." It follows that the bank is entitled to recover no more than the balance of the trust funds which will be in the hands of the receiver after the restoration of the $2,000 formerly allowed to him as compensation and after the payment of the expenses of the receivership including the costs and expenses of the litigation prior to the present proceedings.

[5] Nor should the receiver personally be compelled to pay for the services of the attorneys of the Buckeye Wheel Company in addition to the payment in full of the claims of his merchandise creditors. He has no claim to be satisfied, in whole or in part, from the money which

he must pay into court. He will receive no benefit therefrom. The payment of his unauthorized debts is all that equity can demand of him. Those who will share the benefits of the fund so created must also share the expense of its creation.

The case will be remanded to the District Court, with directions to modify and to recast its decree so as to require the receiver: (1) To repay and restore to the trust fund the sum of $2,000 heretofore allowed to him as compensation. (2) To pay from the fund then in his hands the expenses of the receivership, including the costs and expenses of the former suit with the bank, as the same shall be fixed and adjusted by the court, but not including the expenses of the present proceeding. (3) To pay to the bank the balance of the fund in his hands, or so much thereof as may be necessary to satisfy its claim with interest. (4) Personally to pay into court a sum of money equal to the aggregate amount of the claims of his merchandise creditors with interest thereon at the legal rate. (5) To pay from the fund so created the expenses (other than taxable costs) of the Buckeye Wheel Company in this proceeding, including fair and reasonable compensation to its attorneys, as the same shall be fixed and determined by the court. And (6) To distribute the balance of the fund ratably among his merchandise creditors in satisfaction of their claims.

So modified, the decree of the District Court is affirmed, with costs of both courts to be taxed against appellant personally.