## BANK OF WASHINGTON v. CREDITORS.

*Receiver—Surety and Principal—Practice.*

1. A receiver and his surety cannot be sued upon the bond for an alleged breach of his trust, before a default is ascertained—the proper practice being to apply to the court for a rule on the receiver to render his account.

2. Where the receiver's delinquency is manifest and he fails to comply with the order of the court in respect to the fund; such failure is a breach of the bond, upon which suit may be brought by leave of the court.

(*Lord* v. *Merony,* 79 N. C., 14, cited and approved.)

MOTION in the cause heard at Fall Term, 1881, of BEAU-FORT Superior Court, before *Bennett, J.*

The motion was made by Calvin J. Cowles, a creditor of the plaintiff bank, to make R. W. Wharton, administrator of D. M. Carter, deceased, a party defendant, and denied by the court.

*Mr. Geo. H. Brown, Jr.,* for appellant, Cowles.
*Mr. James E. Shepherd,* for administrator, Wharton.

SMITH, C. J.   The bank of Washington, created and organized under the laws of this state, pursuant to the provisions of the act passed " to enable the banks of this state to close their business," (acts 1865–'66, ch. 3,) at fall term, 1866, of the court of equity of Beaufort county, filed its bill against the creditors of the bank for the dissolution of its corporate organization and the surrender of its property and effects among them.   At the same term John G. Blount was appointed commissioner with the powers and subject to the responsibilities therein specified, and he entered into bond payable to the state in the penal sum of $50,000, with D. M. Carter and others sureties for the faithful discharge of the trusts of his office.

At spring term, 1879, of the superior court, the successor of the former court of equity, Calvin J. Cowles, an alleged creditor, who had proved his debt against the bank, in a verified petition, applies to the court for leave to make R. W. Wharton, administrator of said D. M. Carter, since deceased, a party to the action, and therein alleges that funds in a large amount went into the hands of the commissioner and were by him delivered to the intestate as agent for collection, and for the indemnity of himself and his co-sureties on the bond; that no account thereof has been rendered by either, or any money paid in for distribution among the creditors, and he asks that the said administrator be made a

party, and process issue against him for the purpose of enforcing the liability incurred by his intestate by reason thereof.

To this petition the record states that the said administrator demurred on the ground that his intestate in his lifetime was not a party to the cause, and that if the commissioner, the principal on the bond, is in default, and the estate of the intestate is sought to be charged by virtue of the said suretyship, the remedy is by a separate and independent suit upon the bond.

While the filing a demurrer itself makes the demurrant a party to the action and renders the issuing of process for that purpose unnecessary, the counsel, (both of them in their arguments before us,) have treated this as a special intervention for the sole purpose of showing cause why the proposed leave to make him a party should not be given, and the writing filed, (under a misnomer as to its office and purpose,) but a statement of such cause. We shall so regard it.

The mode of procedure adopted by the appellant to enforce an assumed liability of a surety for a supposed default of the principal, an appointee of the court, acting under its authority and subject to its control, when no such default has been ascertained, is anomalous; and counsel for the appellant admits his inability to find any precedent in its support. In our opinion the course pursued is irregular and indefensible on principle or authority.

The creditors are all parties when they have proved their debts, and any one may demand the aid of the court in securing and appropriating the funds in the hands of its appointees. He may by rule bring the commissioner before the court and compel him to make report of his dealing with the trust funds, and account for what is or ought to be in his hands. If necessary a reference may be made to ascertain the condition and value of the assets, what sum

he is properly chargeable with, and in order to a disposition of them. If from the report his delinquency is manifest, and he fails to comply with the directions of the court, such failure will be a breach of his official obligation, and it may be enforced in a proper proceeding as well against the sureties as against himself. The practice is thus stated by a recent author : " When the bond or recognizance given by a receiver is conditional to be void if he shall duly perform his duties, as receiver, and account to the court, the obligation becomes absolute on his failure to do so. It is held, however, that the receiver and his sureties are *not liable to an action upon the bond* until he has failed to obey some order of the court, touching the effects placed in his hands. And the proper practice would seem to be, to first apply to the court for a rule upon the receiver to render his account. After the account is adjusted and approved by the court, and the receiver is ordered to pay the effects in his hands into court, or to the person entitled thereto, a failure to comply with such order renders himself and his sureties liable. The receiver and his sureties cannot, therefore, be sued upon the bond, until the court has adjudicated the question and made some order touching the rights of the parties to the property, in his hands." High on Receivers, § 120. *State Gibson*, 21 Ark., 140.

So in *Ludgater* v. *Channel*, 3 Mac. & G., 175, upon application leave was given to bring suit against the sureties to the receiver's bond.

The statute under which the receiver was appointed and which prescribes his duties, does not permit him to disburse the moneys he may collect, but must report the amount and the creditors' claims proved before him, and then he must " pay out as the court shall order and direct." § § 3 and 5.

We do not say that a person receiving and misapplying the assets may not be reached by an order in the cause and

be made responsible therefor, as is held in *Lord* v. *Merony*, 79 N. C., 14, upon notice, by virtue of his relations with the officer or defaulting agent. But the remedy against the estate of the intestate as the recipient of the funds placed with him to collect and appropriate, as the commissioner is required to do, and thus exonerate the sureties, is expressly disclaimed, and the proceeding is pressed against the representative of the surety solely upon his obligation as such, for the consequences of the delinquency of the principal obligor. The remedy resorted to, to pursue and charge the intestate is premature, and, if the proper course, is open only upon an ascertained default.

It is not necessary to decide whether, when the facts warrant a proceeding, it must be an independent suit. But the general rule is, that redress, when attainable by a motion in the cause, cannot be found in a separate suit, and this would seem to result from the concentration of legal and equitable powers in a single tribunal. But we do not determine the point because it is unnecessary to do so in this appeal.

There is no error. Let this be certified.

No error.                                     Affirmed.