**UNITED STATES of America, Plaintiff,**

v.

**William V. McPHERSON, Jr., Defendant.**

**No. C–84–763–D.**

United States District Court, M.D. North Carolina, Durham Division.

March 21, 1986.

Robert L. Welsh, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

William V. McPherson, Jr., Durham, N.C., pro se.

## MEMORANDUM OPINION AND ORDER

HIRAM H. WARD, Chief Judge.

This case is a civil action brought by the United States against the defendant William V. McPherson, Jr. (McPherson) for the purpose of obtaining a judgment against McPherson personally for failure to honor a levy under 26 U.S.C. § 6332(c).[1] The

---

1. Section 6332(c)(1) reads as follows:

Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary or his delegate, shall be liable in his own person ... to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made....

United States seeks to collect the sum of $9,149.37 from McPherson pursuant to the statute. The Court finds McPherson not liable for any amount to the United States in connection with this action because the taxpayer's property involved was subject to an attachment or execution by a state court for which McPherson was acting as a receiver.

McPherson was appointed by State Superior Court Judge Thomas Lee on April 21, 1982 for the purpose of taking possession of all the assets of the partnership of "McCain & Moore." Joint Stipulation # 10 (J.Stip. ____). "McCain & Moore" was a partnership which had engaged in the practice of law. This partnership dissolved on May 18, 1981. J.Stip. # 8. Subsequent to the dissolution legal disputes arose between the partners concerning identification, accounting of, and division of the partnership's assets. J.Stip. ## 7, 8, 9, and 10. It was in this flurry of litigation that Judge Lee determined that a temporary receiver was appropriate.

The principal asset of the partnership was the 100% ownership of the outstanding capital stock of American Preservation Ltd. (American). American's sole asset was a house and lot located in Durham, North Carolina. J.Stip. # 7.

On June 4, 1982 McPherson filed his initial report with the Clerk of Superior Court, disclosing partnership assets of $133,058.79 and debts of $102,133.84. McPherson requested, by motion filed June 11, 1982, and the Superior Court gave him authority and direction to sell the house and lot in Durham pursuant to a written contract. J. Stip. ## 15 & 16.

The Sheriff of Durham County served McPherson on June 13, 1982 with an order of attachment and garnishment issued by the District Court of Durham County. This order purported to attach the interest of William H. Moore, Jr., (Moore), in the funds and property in the hands of McPherson as Temporary Receiver, to secure an indebtedness of $3,564.49, due from Moore, to Hugh Thomas Driver d/b/a Speed Dee Que Instant Printing. J.Stip. # 18.

McPherson was served with Notices of Levy by Thomas Urich, a Revenue Officer of the Internal Revenue Service, on July 22, 1982 in the amount of $1,931.34 and on August 10, 1982 in the amount of $20,195.78 for past due taxes of Moore. The Notices of Levy were against all property or rights of property belonging to Moore, in the hands of McPherson. J.Stips. ## 22 & 23.

An Order of Attachment and Garnishment was served on McPherson on October 4, 1982. This order issued by the District Court of Durham County purported to attach the interest of Moore, in the funds and property in the hands of McPherson as receiver, to secure an indebtedness of $5,000.00 due from Moore to Griffin Associates, Inc. J.Stip. # 24.

A judgment dated December 20, 1982 entered by Judge Preston determined the interest of Moore, in the funds of McCain & Moore held by McPherson as Temporary Receiver, to be $9,149.37. The judgment directed McPherson to pay the sum of $9,149.37 to the Clerk of Superior Court for the use and benefit of Moore and his creditors. On December 22, 1982, McPherson deposited the sum of $9,149.37 in the office of the Clerk of Superior Court of Durham County, in accordance with the Judgment entered by Judge Preston. J.Stip. # 26.

Written notice from McPherson of the judgment and of the deposit with the Clerk of Superior Court of the funds otherwise due Moore was sent on December 22, 1982 by certified mail—return receipt, to the Internal Revenue Service, and to the attorneys for Driver and Griffin Associates, Inc. Enclosed therewith was a copy of the Judg-

Section 6332(a) requires:

[A]ny person in possession of property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary or his delegate, surrender such property or rights to the Secretary or his delegate, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

ment, in accordance with the terms of the Judgment entered by Judge Preston. J.Stip. # 30. The letter of notice dated December 22, 1982, from McPherson to Mr. Urich was received by the Internal Revenue Service on December 23, 1982. J.Stip. # 31.

Homa J. Freeman, Jr., attorney for Driver filed a motion, on January 5, 1983, in the cause in an action entitled "Hugh Thomas Driver, d/b/a Speed Dee Que Instant Printing, Plaintiff, vs. William H. Moore, Jr., Defendant, No. 82–CvD–467," then pending in the District Court of Durham County. The motion sought an order directing the disbursement of $3,595.59 to Driver out of the funds on deposit with the Clerk of Superior Court for the use and benefit of Moore. J.Stip. # 32.

On January 10, 1983, Thomas W. Urich, of the Internal Revenue Service, served a Notice of Levy upon the Clerk of Superior Court of Durham County, in the amount of $23,823.51, against all property or rights of property belonging to Moore in the hands of the Clerk of Superior Court. J.Stip. # 33. On January 21, 1983, the civil proceeding entitled "Hugh Thomas Driver, d/b/a Speed Dee Que Instant Printing, Plaintiff, vs. William H. Moore, Jr., Defendant, No. 82–CvD–467," came on for hearing before David Q. LeBarre, Judge of the District Court of North Carolina, upon Driver's motion for an order directing the disbursement of $3,595.59 out of the funds on deposit with the Clerk of Superior Court. The Internal Revenue Service did not appear at the hearing. Judge LaBarre entered an Order directing the disbursement of $3,595.59 by the Clerk of Superior

Court to Driver, out of the funds deposited with him for the use and benefit of Moore and his creditors.[2] J.Stip. # 34. On February 11, 1983, the Clerk of Superior Court disbursed the sum of $3,595.59 to Driver out of the funds deposited by the defendant pursuant to the Judgment of Judge Preston. The sum of $5,539.09 (net of 1982 and 1983 North Carolina Intangibles Taxes) remains on deposit with the Clerk of Superior Court for the use and benefit of Moore and his creditors. J.Stip. # 35.

The United States contends simply that since McPherson did not pay over any funds to the IRS pursuant to levies, for unpaid taxes of Moore, served on him on July 22, 1982 and August 10, 1982, he is personally liable for the sum of $9,149.37—the amount of Moore's interest in the partnership assets, as determined by the state court, held by McPherson as temporary receiver. McPherson first asserts that as a temporary receiver, he was not in possession of property or rights to property belonging to Moore, nor was he a person obligated with respect to such rights within the meaning of 26 U.S.C. § 6323(a). McPherson also contends that the property of McCain & Moore in his hands as a receiver was subject to an "attachment or execution under any judicial process," and therefore not subject to surrender under 26 U.S.C. § 6332(a).

Initially a brief sketch of the nature of the position of a receiver under North Carolina law is necessary.[3] In North Carolina a judge has the power to appoint a receiver to protect rights and prevent the perpetration or continuance of wrong in respect to the subject matter of the action. N.C.Gen.

---

**2.** The record is silent concerning whether the IRS challenged this disbursement.

**3.** In North Carolina two types of receivers are delineated in the statute. The first is the receiver appointed as a provisional remedy in an ordinary suit. N.C.Gen.Stat. §§ 1–501 to –507. This receiver is an officer of the court for a specific purpose. He has only such powers as are designated in the order of appointment, or as may be incidental to the purpose of appointment. The receiver in this case, McPherson, was this type of a receiver. Therefore, the discussion of the position of a receiver will center

on the duties and responsibilities of this type of receiver.

The second type of receiver in North Carolina is the receiver of a corporation. N.C.Gen.Stat. §§ 1–507.1 to –507.11. The corporate receiver involves a longer tenure and much more active control. All of the property of the corporation vests in him at the time of his appointment, and the title of the corporation is thus divested. N.C.Gen.Stat. § 1–507.3. The United States wrongly classifies McPherson as this type of receiver—clearly he was not.

Stat. § 1–501, –502; *John L. Raper Lumber Co. v. Wallace*, 93 N.C. 22 (1885). The appointment of a receiver rests in the sound legal discretion of the judge. *Whitehead v. Hale*, 118 N.C. 601, 24 S.E. 360 (1896). A receiver may be appointed by a court to preserve specific property that is the subject of litigation pendente lite or to enforce a decree of a court of equity. *See* F. Wyatt, *State Court Receiverships in North Carolina*, 17 Wake Forest Law Review 745 (Oct.1981).

A receiver is an officer of the court, and his possession of the property is the possession of the court. *See generally* 20 C.F.R. § 301.633–1.[4] He holds it as a custodian until the rightful claimant is ascertained by the court. *Battle v. Davis*, 66 N.C. 252 (1872). A receiver is a ministerial officer of a court, appointed as an indifferent person between the parties to a suit merely to take possession of and preserve, pendente lite, the fund or property in litigation when it does not seem equitable to the court that either of the litigants should have possession of the property. *Skinner v. Maxwell*, 66 N.C. 45 (1872).

> He holds the property for the benefit of all the parties interested. His title and possession *is that of the court,* and any attempt to disturb his possession, or to interfere with him, when he is acting under the authority and orders of the court, is contempt, and punishable accordingly.

*State v. Norfolk & S.R. Co.*, 152 N.C. 785, 67 S.E. 42 (1910) (emphasis added). "A receiver is sometimes called 'the hand of the court,' by which it holds and controls the property, not for any party, but for the benefit of all, and without affecting the title of any of the litigants." 2 McIntosh, *N.C. Practice and Procedure*, § 2251 (2d ed. 1956). The receiver is an officer of the court and subject to its orders in relation to the property for which he is responsible until discharged by the court. *Federal S. & L. Ins. Corp. v. PSL Realty Co.*, 630 F.2d 515 (7th Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981). A receiver's possession does not interfere with any existing liens, priorities, or prevent preferences, but does prevent their enforcement until a court can determine the relative rights. *Id. See also, Vanderwal v. Vanco Dairy Co.*, 200 N.C. 314, 156 S.E. 512 (1930). A receiver, therefore, is under the control of the court and must obey its orders to avoid sanctions by the supervising court.[5]

Against this background the Court must determine if McPherson's position as receiver and his subsequent actions in that position provide a defense against personal liability for failure to surrender property to the United States pursuant to 26 U.S.C. § 6332(a). The Court finds McPherson to have a valid defense.

■ The only recognized defenses to a suit by the IRS to obtain possession of property subject to a tax levy is that: (1) the property was subject to an attachment or execution under judicial process at the time the levy was served or; (2) defendant was not in possession of the taxpayer's property.[6] *See United States v. National Bank of Commerce*, —— U.S. ——, ——, 105 S.Ct. 2919, 2925–26, 86 L.Ed.2d 565,

---

4. This regulation, discussed later in this opinion, equates a bankruptcy action with a receivership. A federal court would have little trouble finding a bankruptcy trustee, in the performance of his duty, not personally liable for an IRS levy.

5. Beyond the contempt powers of the supervising court, a receiver must post a bond. N.C. Gen.Stat. § 1–504. Where the receiver's delinquency is manifest, and he fails to comply with the order of the court in respect to the fund, that failure is a breach of the bond. A suit may be brought by leave of court. *See Bank of Washington v. Creditors*, 86 N.C. 323 (1882).

6. McPherson's argument that the property was not in his possession but instead in the Court's possession would be an alternate ground for this holding. However, this defense would involve the Court in resolving difficult and murky questions of possession: such as the exact nature of the state court and the receiver's interest in the estate and whether the receiver's interest rises to that of possession satisfying the tax levy statute. Possession is often read broadly under this tax statute, in order to cover the varieties of fact patterns that may arise. The Court, therefore, grounds its opinion principally under the "attachment or execution" defense.

575 (1985); *United States v. Weintraub*, 613 F.2d 612, 620 (6th Cir.1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980); *United States v. Trans-World Bank*, 382 F.Supp. 1100 (D.C. Cal.1974).

In *United States v. Swink*,[7] 41 F.Supp. 98 (E.D.Va.1941), F.G. Swink by deed of assignment for the benefit of creditors received assets of the taxpayer corporation. Swink held the assets as trustee—a custodian of the court, subject to distribution upon the order of the state court. As trustee he sold the assets conveyed to him, and after payment of costs and expenses, deposited the remaining fund in a special account in his name as Trustee. A warrant of distraint was served upon Swink for taxes due by the taxpayer corporation. Swink as trustee failed to turn over the property of the delinquent taxpayer to the IRS. The IRS sought recovery against Swink individually pursuant to 26 U.S.C. § 3710.[8]

The court found that Swink was not personally liable to the IRS because at the time of the distraint the property was "subject to an attachment or execution under any judicial process." In interpreting the defense that the property was "subject to an attachment or execution under any judicial process" the court stated:

It seems to me that the quoted language should be given a *liberal construction* to avoid any unseemly and irreconcilable conflict between the federal government and the state courts. For this reason, I believe that a liberal construction of the statute should be had, and that it should be held that when a fund is taken into the custody of a State Court subject to distribution pursuant to the judgment ... of that Court the fund is 'subject to an attachment or execution' under the judicial process of the State Court.

*United States v. Swink*, 41 F.Supp. at 102 (emphasis added). In *Swink* as in the present case the trustee or receiver was holding property of the taxpayer as a custodian for the court. Neither Swink not McPherson was able to distribute funds without a court order.[9]

*Swink* points out the inequity of holding a trustee or receiver personally liable when his only activity was compliance with a state court's orders. The Court is also mindful of the *Swink* Court's adherence to comity and federalism and its resistance to trampling a state court's lawful function. The United States' position in this case is untenable. If Swink or McPherson had complied with the IRS notice of levy and turned property over to the IRS they would have been subject to contempt sanctions from the state court and other liability for a violation of their duties to the state court.

McPherson did all he could to protect the IRS tax lien. He informed the state court of the notices of levy and even asked the state court to extend the receivership to allow him to settle the claims. The state court, however, after determining Moore's interest ordered McPherson in a final judgment to turn Moore's interest over to the Clerk of Superior Court. McPherson followed the court's order and placed the money with the Clerk. It is this action which seems to have triggered the United States' wrath.[10]

---

**7.** The United States has seen fit not to cite the *Swink* case in its Trial Brief. Such an omission violates the spirit of the reasonable inquiry standard imposed by Rule 11, Fed.R.Civ.P. *Swink* is one of the few cases in this circuit in this area, it is on point with the present case, and has been cited with approval in other circuits. While the United States may disagree with *Swink*'s result, an attempt to distinguish it or reject it is more appropriate than ignoring it.

**8.** Section 3710 was a similar and earlier version of section 6332.

**9.** Unlike cases concerning joint bank accounts where a taxpayer has an unrestricted right to withdraw funds, in *Swink* and the present case the taxpayer had no access to funds during the receivership.

**10.** The United States seeks from McPherson $9,149.37. This amount was not determined by the state court until December 22, 1982 some six months into the receivership. McPherson at that point was simply to pay the fund over to the clerk of superior court. Until December 22, 1982 the taxpayers' interest in the partnership was unknown.

In essence the United States seeks to have this Court undermine the authority of a state court and work a miscarriage of justice on McPherson. The IRS would have the Court through its ruling send a message to the trustees and receivers under direction of a state court that their duty to obey the state court order is subservient to an IRS notice of levy. The IRS's regulations themselves recognize that property in state court receivership is under the control of the court in which such proceeding is pending. The regulation further states that "[t]axes *cannot* be collected by levy upon assets in the custody of a court, whether or not such custody is incident to a bankruptcy *or* receivership proceeding." 26 C.F.R. § 301.6331–1 (1984) (emphasis added).[11] If the IRS's views were followed, individuals would not accept a state court appointment as a receiver or trustee whose duties would include inventoring, collecting, and selling property of an individual, partnership, or corporation. Under the United States' position, any potential tax liability clouding the estate would require the trustee, if he accepted the court's appointment, to choose and accept either personal tax liability for the taxpayer's taxes, or a contempt citation or bond forfeiture in the state court. The tax levy statute was not intended to have such a execrable result.

The Court determines that McPherson has a valid defense against the IRS because the property in this action was subject to a prior judicial attachment or execution by virtue of the property being the subject of a state court supervised receivership. The Court cannot find McPherson to be personally liable for what he was required to do by a state court. The United States has undertaken an unreasonable suit, one whose result could have been predicted from a reading of case law, regulations, and an inquiry into common sense and fairness. The Court would agree that under certain circumstances, when a receiver has acted beyond the state court's or-

ders and violated his duties as a receiver, he could be personally liable for the taxes of a taxpayer whose property is in receivership. However, this is not that case.

The Court finds that McPherson is not liable to the United States upon its claim.

A Judgment will be entered accordingly.

---

**11.** 26 C.F.R. § 301.6331–1 recognizes that receivers and bankruptcy trustees are similar in the sense of not being personally liable to the IRS under 26 U.S.C. § 6332(c).